## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL MARINE & INDUSTRIAL APPLICATORS, INC., an Alabama Corporation | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. MJG-02CV-3542 |
| UNITED STATES OF AMERICA, and | ) ) ) | |
| BALTIMORE MARINE INDUSTRIES, INC., and | ) ) ) | |
| HELLER FINANCIAL, INC. | ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION BY
## DEFENDANT HELLER FINANCIAL, INC. TO
## DISMISS THE SECOND AMENDED COMPLAINT AGAINST IT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### Preliminary Statement

Defendant, Heller Financial, Inc. ("Heller"), a secured creditor of defendant Baltimore

Marine, Inc. ("BMI"), received the proceeds of its collateral when the defendant United States

made a contractual payment due BMI under a government contract to repair the public vessel

RESOLUTE. Plaintiff, International Marine & Industrial Applicators, Inc. ("IMIA"), an

unsecured creditor of BMI that provided work as a subcontractor on the public vessel, seeks in

this action to, among other things, impose a constructive trust on the proceeds in Heller's

possession pursuant to either a federal maritime lien or Maryland statutory boat or equitable lien.

See IMIA's fourth, fifth, sixth and seventh causes of action in its Second Amended Complaint (the "Second Amended Complaint").

The Second Amended Complaint, however, fails to set forth facts sufficient to support the imposition of a constructive trust on the monies in Heller's possession. First, there is no factual basis to invoke equitable constructive trust principles because Heller committed no wrongful act by merely receiving proceeds of collateral justly due to satisfy a portion of BMI's secured obligations to Heller. Second, as a matter of law, IMIA cannot establish that it had a better right than Heller to receive the monies under any lien theory set forth in the Second Amended Complaint. Accordingly, Heller respectfully moves to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b).

### Statement of Facts

For the purposes of this motion only, the following facts are presumed to be true:[1]

- IMIA admits that Heller claims a perfected security interest in the proceeds pursuant to Title 9 of Md. Commercial Law Code Ann. § 9-101, et seq. (2002) ("Article 9"). See ¶ 45 of the Second Amended Complaint, a copy of which is annexed as Exhibit A to the accompanying Declaration of John P. Amato, dated March 7, 2003 (the "Amato Declaration"). Heller, in fact, is a secured lender of BMI with a security interest in, among other things, all of BMI's accounts receivable. Heller duly perfected its security interest on or about May 22, 2000 by filing a financing statement with the office of the Maryland Secretary of State. A

---

[1] While Heller agrees on this motion to assume the truth of the facts alleged in the Second Amended Complaint, Heller reserves the right to contest IMIA's version of the facts in any further proceedings that may be conducted in this case.

copy of Heller's filed financing statement is annexed as Exhibit B to the Amato

Declaration.[2]

- On or about September 9, 2000 (almost four (4) months after Heller filed its

  financing statement), BMI, with the United States' knowledge and consent,

  subcontracted with IMIA to perform some of the repair work on the public vessel,

  RESOLUTE.  Second Amended Complaint, ¶ 8.

- IMIA, after completing its work, submitted to BMI a change order request in the

  amount of $2,181,398.12.  Second Amended Complaint, ¶ 13.

- BMI then submitted its own change order request to the United States that

  included IMIA's change order request delivered to BMI.  Id.

- In October 2002, the United States and BMI settled BMI's change order request.

  Second Amended Complaint, ¶16.

- The United States then agreed to pay BMI an unspecified amount based upon

  BMI's representations that it would pay IMIA the monies to which it was

  allegedly entitled to receive.  Second Amended Complaint, ¶ 17.

- On October 9, 2002, the United States delivered to BMI the settlement sum on

  BMI's change order request.  Second Amended Complaint, ¶ 18.

- Heller eventually received the monies that the United States remitted to BMI.

  Second Amended Complaint, ¶ 19.

---

[2]    This Court may take judicial notice of Heller's security interest.  Judicial Watch v. Rossotti, 217 F. Supp.2d 618, 622 (D.Md. 2002) ("in ruling on the motion [to dismiss], the Court should consider ... matters of public record and other similar materials that are subject to judicial notice"), citing Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995), vac. on other grounds, 517 U.S. 1206 (1996); In re Mines Tire Co., 194 B.R. 23 (Bankr. W.D.N.Y. 1996) (court took judicial notice of publicly filed UCC financing statements).

- IMIA then commenced this action claiming it has a right to impose a constructive trust on the monies Heller received pursuant to a federal maritime or Maryland statutory or equitable lien theory. Second Amended Complaint, fourth, fifth, sixth and seventh causes of action.

## ARGUMENT

### IMIA IS NOT ENTITLED TO FORCE HELLER TO DISGORGE THE PROCEEDS OF ITS COLLATERAL

**A.    Standard For Dismissal Under Fed. R. Civ. P 12(b)(6)**

When "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the claim must be dismissed for failing to state a cause of action. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). On a motion to dismiss, the trial court must accept all of the complaint's allegations as true. Caddell v. Singer, 652 F.2d 393, 394 (4th Cir. 1981). While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. Faulkner Advertising Assoc., Inc. v. Nissan Motor Corp., 945 F.2d 694 (4th Cir. 1991). Thus, courts routinely grant motions to dismiss where a plaintiff's complaint contains only self-serving legal conclusions that are unsupported by sufficient factual allegations from which such legal conclusions can be reasonably reached. District 28, United Mine Workers v. Wellmore Coal Corp., 609 F.2d 1083, 1086 (4th Cir. 1979).

In this case, IMIA claims to be a lienholder on the monies that were paid by the United States to BMI in satisfaction of the United States' obligations to BMI under a government contract. According to IMIA, it has the right to trace the proceeds into Heller's hands and then force Heller to disgorge the proceeds pursuant to a constructive trust theory.

The causes of action pressed by IMIA to accomplish this feat rest on two meritless legal conclusions. First, IMIA's claim that the monies paid to Heller were the proceeds of a federal or state law lien on the public vessel is belied by both the law and the facts. Federal law expressly precluded IMIA from having a lien on the public vessel. More importantly, the monies paid by the United States were not the proceeds from the sale or operations of the public vessel but, instead, nothing more than unencumbered general public funds that Heller had every right to receive pursuant to its Article 9 security interest on BMI's accounts receivable and other assets. Second, the Second Amended Complaint is devoid of facts supporting IMIA's legal conclusion that Heller would be unjustly enriched if Heller is permitted to retain the monies. To the contrary, Heller was entitled to receive the monies as the proceeds of its duly perfected Article 9 security interest. For these reasons, discussed further below, the Second Amended Complaint should be dismissed against Heller.

**B.      The Facts Do Not Support a Constructive Trust Claim Against Heller**

Under Maryland law, a constructive trust may be imposed on property that justly belongs to a person but is being held by another person. Wimmer v. Wimmer, 287 Md. 663, 668 (1980). To succeed on such a claim, the equitable owner of the property must prove by clear and convincing evidence that the person holding the property either (a) acquired it through fraud, duress, undue influence, mistake or through a breach of fiduciary duty, or (b) would be unjustly enriched if permitted to retain the property. Id. ("[t]he remedy is applied by operation of law where property has been acquired by fraud, misrepresentation or other improper method or where circumstances render it inequitable for the party holding the title to return it. [Citations omitted.] The purpose of the remedy is to prevent unjust enrichment of the holder of the property."); see e.g., Sharon Ann Starleper v. Sandra L. Hamilton, 106 Md.App. 632 (Ct. Spec. App. 1995) (the

divorced wife of a deceased husband who wrongfully changed the named beneficiary under an insurance policy in violation of a separation agreement was permitted to trace the insurance proceeds for the benefit of a minor son into the hands of the husband's second wife who would be unjustly enriched if permitted to keep the insurance proceeds).

Here, IMIA claims to be the rightful owner of the funds paid to BMI by the United States because they were allegedly the proceeds of a (a) maritime lien on the public vessel RESOLUTE based upon the Maritime Commercial Instruments and Lien Act ("MCILA"), 46 U.S.C. § 31342 (2002 Supp.), and the in personam provisions of the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 741-52, (b) statutory boat lien on the public vessel RESOLUTE under Md. Commercial Law Code Ann. § 16-202(b), or (c) Maryland common law equitable lien. As discussed below, IMIA, as a matter of law, had no such lien rights.

Before proceeding to explain the reasons why IMIA was never a superior lienholder on the monies received by Heller, it is important to highlight two fundamental pleading deficiencies in IMIA's constructive trust claim that render the lien issues academic. First, while IMIA asserts the legal conclusion that Heller would be unjustly enriched if it is permitted to keep the funds, the Second Amended Complaint is devoid of any factual allegation from which such a conclusion can be reached. Instead, the facts alleged in the Second Amended Complaint and to which this Court may take judicial notice belie that Heller would be unjustly enriched if it is permitted to retain the funds. See Dulany v. Taylor, 105 Md. App. 619, 635 (Ct. Spec. App. 1995) (where party fails to show that it "would be inequitable for [party in possession of money] to retain this money," constructive trust claim must be denied).

Heller lent BMI in excess of $10 million, which money BMI had every right to use for overhead expenses to perform its contract with the United States and pay its subcontractors,

including IMIA.  Pursuant to that lending relationship, Heller was granted a perfected security interest in, among other things, BMI's accounts receivable due from the United States.  See Amato Declaration, Exhibit "B".

The Second Amended Complaint fails to address Heller's publicly filed financing statement when it baldly concludes that Heller will be unjustly enriched if Heller is permitted to retain the monies paid by the United States.  The Second Amended Complaint also fails to discuss any factual scenario from which this Court may reach the conclusion that the payment of the monies to Heller was for some reason other than to satisfy BMI's obligations to Heller under a customary secured loan.  Given the complete absence of any factual allegations to support IMIA's unjust enrichment allegation, IMIA's constructive trust claim must be deemed to fail to state a claim for relief upon which relief can be granted.  See Dow v. Jones, 232 F. Supp. 2d 291, 495 (D. Md. 2002) ("[i]n addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions").

IMIA also fails to set forth any facts why the equities should tip in favor of IMIA and against Heller concerning the monies in Heller's possession.  Heller filed its financing statement more than two years ago and well before IMIA was retained by BMI to perform work as a subcontractor on the RESOLUTE.  IMIA, which is no doubt a sophisticated party as evidenced by the sheer size of its contractual claim in this case, had every opportunity to research the public records and become aware of Heller's duly perfected lien.  If IMIA desired to protect itself, it could easily have (a) required BMI to post some type of security or (b) contacted Heller to enter into an intercreditor agreement.  IMIA, however, does not allege that it took any action to protect itself from the normal operation of Heller's blanket security interest and lien.  Accordingly, there simply is no basis to conclude from the four corners of the Second Amended Complaint that

Heller will be unjustly enriched if permitted to retain the funds. See National Union Fire Ins. Co. of Pittsburgh, P.A. v. The United States Terre Haute First National Bank, 304 F.2d 465 (Ct. Cl. 1962) (assignee bank, which loaned money to the contractor for use in the performance of the government contract, had right to receive any progress payments from the United States that were due prior to any default by the contractor).

Other than IMIA's use of the words "unjust enrichment", the Second Amended Complaint is simply devoid of any allegation that could conceivably support a constructive trust claim against Heller. For instance, IMIA fails to allege that Heller (a) perpetrated any fraud, (b) exerted any duress or undue influence, (c) received the monies by mistake, or (d) committed any breach of fiduciary duty prior to receiving the proceeds of its collateral. See Dulany, 105 Md. App. at 635 ("because there was no evidence that the estate was a 'wrongdoer,' there is no reason why equity should 'wrest' the money from the possession of the estate"). In fact, IMIA's only allegation of "fraud" is on the part of BMI, which allegedly misrepresented to the United States that an appropriate portion of the funds would be immediately delivered to IMIA following payment by the United States. See Second Amended Complaint, ¶ 17. This allegation of an alleged fraudulent factual statement is leveled against BMI and not Heller, which is not even remotely connected to the alleged misrepresentation. Moreover, the alleged statement by BMI does not even appear to be fraudulent in nature since, if made, it amounted to nothing more than a confirmation that BMI had a contractual obligation to pay IMIA for subcontractor work on the public vessel. United States ex rel. Allied Bldg. Prods. Corp. v. Federal Ins. Co., 729 F. Supp. 477, 478 (D.Md. 2000) (court would not impose constructive trust where allegation of fraud was merely breach of contract).

- 8 -

Accordingly, even if IMIA may arguably have had one of the liens it claims it had on the monies received by Heller (which it did not have as discussed below), IMIA has failed to allege sufficient facts to support a meritorious constructive trust theory against Heller. It is therefore academic whether IMIA held a maritime or Maryland statutory or equitable lien since Heller committed no wrong prior to receiving the proceeds of its collateral that it was entitled to receive.

**C.    IMIA Had No Superior Lien on the Proceeds of Heller's Collateral**

As stated above, IMIA's constructive trust claim is premised upon the legal conclusion that IMIA had a lien on the monies that were paid by the United States to BMI that was superior to Heller's prior perfected lien. IMIA, however, has failed to point to any law that supports this legal conclusion. In fact, federal law precluded IMIA from having a lien on the public vessel RESOLUTE. For this reason, IMIA had no right to seize the public vessel and force it to be sold. Accordingly, the monies paid by the United States were clearly not the proceeds of any maritime lien on the RESOLUTE. Instead, the monies that are now in Heller's hands were general public funds that never were impressed with any lien in favor of IMIA.

**(i)    IMIA Had No Maritime Lien**

As is made abundantly clear in the United States' moving and reply memoranda in support of its motion to dismiss the maritime lien claim asserted against it in the first cause of action in the Second Amended Complaint, the MCILA expressly bars maritime liens on public vessels. See Memorandum in Support of the United States' Motion to Dismiss and United States' Reply to Plaintiff's Opposition to United States' Motion to Dismiss, copies of which are annexed as Exhibits "C" and "E" to the Amato Declaration. Since there is no dispute that the RESOLUTE is a public vessel, there can be no dispute that the MCILA's public vessel exclusion

- 9 -

(46 U.S.C. § 31342[b]) is applicable and no maritime lien ever attached to the RESOLUTE. Accordingly, IMIA never had the right to seize the RESOLUTE and force it to be sold.

IMIA admits in its opposition papers to the government's motion that it never had a maritime lien on the public vessel itself. See Plaintiff's Memorandum in Opposition to the Motion to Dismiss of Defendants United States of America, a copy of which is annexed as Exhibit "D" to the Amato Declaration. IMIA also admits that it did not have the right to seize the public vessel and force it to be sold to pay its claim. IMIA nevertheless claims that it has the right to proceed directly against the United States to obtain an in personam judgment in the amount of IMIA's claim for the unpaid repair work it performed on the RESOLUTE.

Assuming IMIA is correct (which it does not appear to be as shown in the United States' reply memorandum), the fact IMIA may have the right to proceed against the United States to obtain an in personam judgment does not mean that IMIA ever had a maritime lien on the general public funds that the United States used to pay BMI and which have been paid to Heller. Instead, the United States, as sovereign, was always entitled to use general public funds to pay BMI unencumbered by any right that IMIA may have had to obtain a monetary judgment against the United States.

If IMIA has the right to proceed against the United States today under the MCILA, then IMIA should proceed to do so, obtain a judgment if proper, and get paid from the United States. IMIA does not, however, have any right to be paid the monies Heller received as proceeds of Heller's collateral. See e.g., American Fidelity Co. v. National City Bank of Evansville, 266 F.2d 910, 915-16 (D.C. Cir. 1959) (where progress payments made by government were paid to a bank, as assignee of a government contractor, the Court of Claims held that (a) the government could not recover those funds unless there was fraud by the bank; (b) the contractor could not

recover those funds because it had assigned them for full consideration; (c) the contractor's

surety, who was forced to pay materialmen and mechanics after the contractor defaulted, could

not recover such payments since they "never had any legal or equitable right to the proceeds of

the contract and so had no right to recover the progress payments from the assignee bank"; and

(d) the surety could only proceed, on behalf of the mechanics and materialmen, against the

contractor).

### (ii)    IMIA Had No State Law Boat Lien

In its sixth cause of action, IMIA alleges it is "entitled to a lien upon the proceeds of the

claim paid by the USA to BMI pursuant to Maryland Code annotated, Commercial Law Article,

§ 16-202(b)." Second Amended Complaint, ¶ 38. IMIA's legal conclusion is not supported by

that section of Maryland law, which provides, in relevant part, that: "[a]ny person who, with the

consent of the owner, has custody of a boat and who, at the request of the owner, provides

service to or materials for the boat, **has a lien on the boat** ...." Md. Commercial Law Code

Ann. § 16-202(b) (emphasis added). The monies received by Heller, however, are not the

proceeds of the sale of the RESOLUTE, or in any way connected with its use or operation.

Instead, the monies received by Heller were general funds in the hands of the United States that

were never impressed with any lien under Maryland law in favor of IMIA.

IMIA's state law boat lien theory is also belied by the fact that section 31307 of the

MCILA, entitled "State statutes superseded", provides: "[t]his Chapter supersedes any state

statute conferring a lien on a vessel to the extent the statute established a claim to be enforced by

a civil action *in rem* against the vessel for necessaries." 46 U.S.C. § 31307. Thus, IMIA's sixth

cause of action must be dismissed because federal law expressly provides that there can be no

state law lien on a public vessel. See Silva v. M/V FIRST LADY, 28 F. Supp. 2d 581, 584 (S.D.

Cal. 1998) (causes of action seeking to establish a maritime lien based on state statute are prohibited by section 31307 of the MCILA); Marlen C. Robb & Son Boatyard & Marina, Inc. v. The Vessel Bristol, 893 F. Supp. 526, 539-40 (E.D.N.C. 1994) (in dismissing plaintiff's claim for wharfage/storage, the court held that (a) section 31307 of the MCILA pre-empts state law liens allowing *in rem* actions and (b) any non-*in rem* state action failed because that action required either an underlying contract or lien, neither of which was present); see also Dietrich v. Key Bank, N.A., 72 F.3d 1509, 1513 (11th Cir. 1996) (section 31307 of the MCILA preempts state law to the extent that state maritime law conflicts with the MCILA); Faneuil Advisors, Inc. v. O/S SEA HAWK, 50 F.3d 88, 94 (1st Cir. 1995) (a lien for necessaries under state law is "entirely foreclosed by 46 U.S.C. § 31307").

Moreover, even if Maryland's boat lien statute is not preempted by the MCILA, IMIA's sixth cause of action must still fail since IMIA was required by that law to send a written notice to Heller of IMIA's alleged lien under § 16-202(b) within 45 days after creation of that lien. Md. Commercial Law Code Ann. § 16-203(b)(1)(ii). IMIA does not allege in the Second Amended Complaint that it gave Heller any such notice.

Finally, IMIA's state law boat lien claim also should be dismissed because a Maryland boat lien "is subordinate to a security interest perfected as required by law." Md. Commercial Law Code Ann. § 16-205(c)(2)(ii). Hence, even if IMIA had a statutory boat lien under § 16-202, and that boat lien somehow transmogrified into a lien on the general government funds received by Heller, that lien would be subordinate to Heller's perfected security interest in the funds paid by the United State that were the express proceeds of Heller's collateral. See National Union Fire Insurance Co., 304 F.2d at 467 (assignee bank, which loaned money to the contractor for use in the performance of the government contract, had right to receive any progress

payments from the United States that were due prior to any default by the contractor); <u>American</u> <u>Fidelity Co.</u>, 266 F.2d at 915-16, <u>supra</u>.

       **(iii)**    **IMIA's Equitable Lien Theory Is Meritless**

Under Maryland law, "[e]quitable liens are proper in situations where an individual intends, by a written instrument, to create a lien on his or her land, but fails, through mistake or oversight to create a statutorily valid lien." <u>Adams v. Aviett</u>, 252 Md. 566, 571 (1969). In the absence of a writing, an "equitable lien, may be found only where the sum total of the circumstances of the dealings between the parties fairly may be said to evidence an intent to create a lien." <u>Equitable Trust Co. v. Imbesi</u>, 287 Md. 249, 260 (1980). Maryland courts have repeatedly stated that "'there can be no existing [equitable] lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (*i.e.*, a declaratory judgment action).'" <u>Scott &</u> <u>Wimbrow, Inc. v. Calwell</u>, 31 Md. App. 1, 6 (Ct. Spec. App. 1976) quoting <u>Barry Properties, Inc.</u> <u>v. Fick Bros. Roofing Co.</u>, 277 Md. 15, 37 (1976).

The Second Amended Complaint is woefully deficient to establish IMIA had any equitable lien on the funds in the hands of the United States before they were paid to BMI. First, there was no written agreement alleged to exist concerning any intention to grant a lien on the monies in the hands of the United States. Even if there was some written agreement, IMIA fails to allege that it had prevailed in a lawsuit declaring the existence of the lien or that IMIA ever provided Heller with notice of a hearing at which IMIA intended to claim the existence of such a lien prior to the monies being paid by the United States.

Most of all, even if BMI desired to grant a lien to IMIA on the monies in the hands of the United States, such a lien would have been subordinate to Heller's duly perfected lien rights in

the funds.  Surely, IMIA cannot achieve through an "equitable" lien more than it would have had

the right to receive had BMI granted IMIA an express lien.  An express lien, however, would

have been subordinate to Heller's fully perfected security interest and lien on the funds since

Heller's lien was filed in May of 2000 and the equitable lien would have arisen no sooner than

years later when IMIA submitted its change order request to BMI.  See, e.g., American Fidelity,

266 F.2d at 915-16 (where progress payments made by government were paid to bank, as

assignee of the contractor, the mechanics and materialmen "never had any legal or equitable

rights to the proceeds of the contract and so had no right to recover the progress payments from

the assignee bank").

## CONCLUSION

For the foregoing reasons, defendant Heller Financial, Inc. respectfully requests that this

Court grant its motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) for dismissal of the

fourth, fifth, sixth and seventh causes of action in the Second Amended Complaint.

Dated:    New York, New York
          March 7, 2003

                                        **PIPER RUDNICK LLP**
                                        Attorneys for Defendant
                                        Heller Financial, Inc.


                                        /s/ Jodie E. Buchman

                                        6225 Smith Avenue
                                        Baltimore, MD 21209
                                        Tel. (410) 580-3000
                                        Fax (410) 580-3001

Of Counsel:
      John P. Amato (admitted *pro hac vice*)
      Hahn & Hessen LLP
      488 Madison Avenue
      New York, NY 10022
      Tel.  (212) 478-7200
      Fax: (212) 478-7400