Fifth Circuit Court of Appeals in *Racal Survey U.S.A., Inc. v. M/V COUNT FLEET*, 231 F.3d 183, 188 (5th Cir. 2000) made the following analysis with respect to the 1988 MCILA:

> In 1988, Congress superseded the prior version of the [Federal Maritime Lien Act] and enacted new provisions primarily at 46 U.S.C. §§ 31341-31343. See *Silver Star Enters., Inc. v. SARAMACCA MV*, 82 F.3d 666, 668 n. 2 (5th Cir.1996). The *most significant change* was that Congress included a definition for "necessaries." See 46 U.S.C. § 31301(4). Section 31301(4) states that " 'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway." In the prior version of the [Federal Maritime Lien Act], "necessaries" was not defined, but its meaning could be derived from the context of § 971, which stated that a maritime lien could be received for furnishing "repairs, supplies, towage, use of dry dock or marine railway, or other necessaries." Although § 31301(4) enumerates specific kinds of "necessaries," *Congress did not intend to make any substantive change to the law.* See H.R.Rep. No. 100-918 (1988), U.S.Code Cong. & Admin.News 1988, 6104. Indeed, besides some other minor changes in language, such as replacing the term "furnishing" with the word "providing," *little changed substantively*. See, e.g., Silver Star, 82 F.3d at 668 n. 2; H.R.Rep. No. 100-918. *Accordingly, much of the case law remains persuasive, if not controlling.*

(emphasis added) (footnotes omitted). *See also Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 917 (9th Cir. 2002) ("The current version of the Maritime Lien Act, 46 U.S.C. §§ 31341-31342, succeed its predecessor, 46 U.S.C. §§ 971-973. Although Congress altered the text of the statute, *it intended no substantive change*.") (emphasis added); *Integral Control Systems Corp. v. Consolidated Edison Co. of New York, Inc.*, 990 F. Supp 295, 298 (S.D. N.Y. 1998) ("Accordingly the cases interpreting the statutory scheme prior to 1988 [i.e., Maritime Lien Act §§ 971-974] recodification remain instructive.")

In sum, Congress did not intend for Section 31342 of MCILA to incorporate substantive changes in the law and therefore Section 31342 is nothing more than a recodification of the Maritime Lien Act §§ 971-974. Therefore, there is nothing contained in MCILA that prohibits a party from

bringing a libel *in personam* suit based upon *in rem* principles of liability for necessaries against the Government.[7]

### III. Section 31342 of MCILA was Only Intended to Prohibit the Arrest And Seizure of a Public Vessel.

When Congress enacted MCILA in 1988 and 1989 it intended to merely recodify existing law with no substantive changes and to reinforce the premise that a party could not arrest and seize a public vessel. The United States argues that Congress must have intended the wholesale repeal of the Suits in Admiralty Act which provided a party the right to proceed against the Government *in personam* where if such vessel were privately owned or operated, a proceeding in admiralty could be maintained.

Contrary to the United States' argument, the 1988 and 1989 versions of Section 31342 of MCILA are substantially the same in that they both include language that prohibits a civil in rem action for a maritime lien against a public vessel. However, as indicated in *Bonanni*, "[a] reading of the MCILA that does not preclude the imposition of a maritime lien against a public vessel, and only prohibits the arrest and seizure of the vessel as a means of effecting a recovery against the

---

[7] The United States' reliance on *Hopeman Brothers Inc. V. USNS Concord*, 892 F. Supp 129 (E.D. Va. 1995), where the court concluded that "Section 31342 could not be more unambiguous," and that the "plain language of the statute is clearly not different from the drafter's design and . . .therefore, a discussion of whether the Fourth Circuit permitted this type of lien before the MCILA would be overreaching" is misplaced as evidenced by the numerous cases cited *supra*, which demonstrate that Congress clearly did not intend any substantive change when it enacted Section 31342 and in light of that fact, it is an entirely reasonable construction that Section 31342 only prohibits civil *in rem* actions against public vessels, but allows libel actions *in personam* based upon *in rem* principles of liability based on the Suits in Admiralty Act.

Government, is both plausible and fully consistent with Stevens[8] and Marine Coatings."[9] *Bonanni*, 959 F.2d at 1563. MCILA also makes no mention of *in personam* actions and only prohibits *in rem* actions against public vessels. Section 31342's prohibition of *in rem* actions against public vessels is in accord with Congress' intent to prevent the arrest and seizure of government owned vessels as explained in *The Lake Monroe*, 250 U.S. 246, 248 (1919). While disallowing an *in rem* seizure of a public vessel, Congress has expressly allowed an aggrieved party to file libel *in personam* based upon *in rem* principles for damages against the government:

> Congress, in 1920, adopted the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. s 741 et seq., which provided generally that a 'libel in personam' for damages could be filed against the government in any case where if the government merchant vessel were privately owned or operated a 'proceeding in admiralty' could be maintained, Section 2 [46 U.S.C. § 742]; but that vessels subject to suit under the Act should not be subject to seizure or arrest, Section 1[46 U.S.C. § 741]. Although [46 U.S.C. § 742] of the Act limited suit to the filing of 'a libel in personam,' this Court interpreted the provisions of [46 U.S.C. § 743] of the Act to *authorize recovery in such suit on admiralty principles of in rem as well as in personam liability*. *Eastern Transportation Co. v. United States*, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472.

*Canadian Aviator v. United States*, 324 U.S. 215, 219-220 (1945) (emphasis added) (footnotes omitted). The Court reiterated its holding in *Canadian Aviator* in *Weyerhaeuser Steamship Co. v. United States*, 372 U.S. 597, (1963) where in a proceeding in libel against the United States for damage sustained in a collision, the court noted, "[a]s this Court has pointed out, the Public Vessels Act was intended to impose on the United States the same liability (apart from seizure or arrest under

---

[8] *Stevens Technical Services, Inc. v. United States*, 913 F.2d 1521 (11th Cir. 1990).

[9] *Marine Coatings of Alabama v. United States*, 71 F.3d 1558 (11th Cir. 1996).

a libel in rem) as is imposed by the admiralty law on the private shipowner [i.e. the Suits in Admiralty Act]." 372 U.S. at 600.

Moreover, the very purpose of 46 App. U.S.C.A. § 743 (Supp. 2002) of the Suits in Admiralty Act is to permit not only a recovery *in rem*, but one *in personam* as well, when the claim is within the framework of the statute. Section 743 reads in part:

> "If the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libelant in any proper case from seeking relief in personam in the same suit. . . ."

46 App. U.S.C.A. § 743. The recovery sought against the United States is not ex contractu, but on a statutory right granted as quid pro quo for preventing the creditor from arrest and seizure of the vessel.

In *Steven Technical*, a subcontractor provided necessaries to a Military Sealift Command vessel, the Sealift Antarctic, a public vessel, at the request of the authorized representatives of the vessel. 913 F.2d at 1525-26. When the plaintiff was not paid for the necessaries provided, it filed suit *in personam* against the prime contractor and *in rem* against the United States. *Id.* at 1526. The plaintiff appealed the ruling of the district court that it could recover nothing on its in rem libel against the United States by virtue of the Public Vessels Act, 46 U.S.C. § 788. *Id.* The *Stevens Technical* panel explained at length the history and genesis of the Public Vessels Act, thus arriving at the question posed almost verbatim by the Supreme Court in *Canadian Aviator*, 324 U.S. at 218: "Does § 788 [of the Public Vessels Act] in the light of the SIA [Suits in Admiralty Act] and PVA [Public Vessels Act] prevent the assertion of a maritime lien for repairs to a public vessel in a PVA suit in

personam with election for in rem liability?" *Stevens Technical*, 913 F.2d at 1527. Relying upon *Canadian Aviator, supra*, the *Stevens Technical* court concluded that "for nearly half a century the Public Vessels Act authorized a libel (complaint) in personam against the government to be determined on principles of both in personam and in rem liability under the maritime law." *Stevens Technical*, 913 F.2d at 1524. As a result of the *Stevens Technical* holding, the *Bonanni* court concluded that, at the time of the 1989 amendments to the MCILA and at the time when the legislative history stated that the amendments caused no substantive change in the law, the law allowed a subcontractor who fell within the statutory definition of a supplier of necessaries to a public vessel to assert a maritime lien against the United States.[10] *Bonanni*, 959 F.2d at 1563.

The United States cites *Colle Towing, Inc. v. United States*, No. 95-1263, 1996 WL 175007 (E.D. La. April 15, 1996) as being in accord with *Sipco*, discussed *supra*. The *Colle* court however, summarily dismissed the plaintiff subcontractor's claim for a maritime lien pursuant to Section 31342 because the plaintiff conceded in its opposition memorandum that it could not proceed *in rem* against Barge No. 834. *Colle*, 1996 WL 175007 at *2. Furthermore, the *Colle* court made no reference to any Eleventh Circuit case law with respect to its holding regarding Section 31342. However, the court discussed at length whether the plaintiff subcontractor had an *in personam* claim against the United States based on the Suits in Admiralty Act, 46 App. U.S.C.A. § 742 and under MCILA, 46 U.S.C.A. § 31341(a)(3) and (4). *Id.* at *2,*3. The *Colle* court briefly analyzed *Steven Technical* and

---

[10]  The Eleventh Circuit in *Marine Coatings of Alabama v. United States*, 932 F.2d 1370 (11ᵗʰ Cir 1991) also acknowledges the availability of *in personam* actions against the United States on *in rem* principles of liability.

*Marine Coatings,* but found that they actually undercut the plaintiff's argument since the plaintiff was unable to demonstrate that the government was aware of the plaintiff's performance and that the contract between the government and the general contractor authorized the use of subcontractors. *Id.* at *3, *4.[11] Based upon the allegations contained in IMIA's Second Amended Complaint, the reasoning of the court in *Colle Towing* allows IMIA to survive the Government's motion to dismiss as it evidences the fact that a subcontractor can assert a libel *in personam* based upon *in rem* principles of liability against a public vessel pursuant to 46 App. U.S.C.A. § 741 *et. seq* for necessaries provided.[12]

III. **Conclusion.**

The law is clear that MCILA does not abrogate the statutory rights conferred under the Suits in Admiralty Act which allow a party to assert a libel *in personam* based upon *in rem* principles of liability against the United States. The Government has offered no evidence that Congress ever intended for MCILA to trump the rights afforded pursuant to 46 App. U.S.C.A. § 741 *et. seq.* Further, the case law cited *supra*, supports the fact that Congress never intended for MCILA to substantively change the law. Therefore, the United States has failed to meet its burden of showing

---

[11] IMIA notes that the *Colle* case dealt with a motion for summary judgment and the court went into a detailed analysis of the facts where in the instant case, the United States has brought a motion to dismiss making a detailed analysis of the facts inappropriate.

[12] IMIA also points out that numerous courts have held that a subcontractor can acquire an equitable lien on undisbursed and wrongfully disbursed funds where the Government had knowledge of the subcontractor and its work, knew the subcontractor had not been paid by the prime contractor, but distributed funds to the prime contractor anyway. *See Kennedy Elec. Co., Inc. v. United States Postal Serv.*, 367 F. Supp. 828 (D. Colo. 1973); *Matter of Rah Development Co., Inc.*, 184 B.R. 525 (W.D. Mich. 1995); *United States Fidelity & Guaranty Co. v. United States*, 475 F.2d 1377 (Ct. Cl. 1973).

753708.1 2/10/03

that IMIA has not alleged a claim upon which relief can be granted. The Government's Motion to Dismiss is due to be denied.

_____
Edward J. Baines, Federal Bar No. 06776
Patrick E. Clark, Federal Bar No. 26628
Saul Ewing LLP
100 South Charles St., 16th Floor
Baltimore, Maryland 21201-2773
(410) 332-8600
(410) 332-8185 (fax)

Attorneys for Plaintiff

OF COUNSEL:
I. David Cherniak, Federal Bar No. CHERI8107
Lawrence J. Seiter, Federal Bar No. SEITL4720
Johnstone, Adams, Bailey, Gordon and Harris, LLC
P. O. Box 1988
Mobile, Alabama 36633
(251) 432-7682
(251) 432-0712

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2003, copies of the foregoing Plaintiff's Memorandum in Opposition to the Motion to Dismiss of Defendant United States of America were sent via first class mail, postage prepaid to:

John P. Amato, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

Michael Schatzow, Esq.
Tracey Cohen Paliath, Esq.
Venable LLP
1800 Mercantile Building
2 Hopkins Plaza
Baltimore, MD 21201

Gregg A. Cervi, Esq.
Peter F. Frost, Esq.
Torts Branch, Civil Division
U.S. Department of Justice
P. O. Box 14271
Washington, DC 20044-4271

Richard M. Kremen, Esq.
Jodie E. Buchman, Esq.
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Thomas DiBagio, Esq.
Thomas Corcoran, Esq.
Office of the U.S. Attorney
6625 U.S. Courthouse
101 W. Lombard Street
Baltimore, MD 21201-2692

_____
Patrick E. Clark