Case 1:02-cv-03542-MJG   Document 32-9   Filed 03/07/2003   Page 1 of 11

Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL MARINE & <br> INDUSTRIAL APPLICATORS, INC., <br> an Alabama Corporation <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, and <br><br> BALTIMORE MARINE <br> INDUSTRIES, INC., and <br><br> HELLER FINANCIAL, INC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. MJG-02CV-3542 |

## UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION TO DISMISS

The single issue addressed by the United States' motion is both simple and dispositive of Plaintiff's claim. Plaintiff claims that they possess a maritime lien for ship repair work (i.e., "necessaries") performed as a subcontractor on a "public vessel" of the United States based on the Maritime Commercial Instruments and Lien Act ("MCILA"), 46 U.S.C. § 31342 (2002 Supp.), pursuant to the in personam provisions of the Suits in Admiralty Act ("SAA"). 46 U.S.C. app. §§ 741-52.

Contrary to Plaintiff's argument however, the SAA is simply a "jurisdictional hook" and does not grant Plaintiff an independent cause of action. Additionally, as stated in the United States' Motion to Dismiss, Congress has expressly foreclosed the Plaintiff's argument. The

MCILA unambiguously excludes public vessels from its ambit. The language and legislative history of the MCILA's "public vessels exception" to the maritime lien for necessaries support the United States' motion.

    I.    **The SAA's "Jurisdictional Hook" and Limited Waiver of Sovereign Immunity Does Not Provide Plaintiff a Cause of Action.**

The Plaintiff asserts that it has a maritime lien on a public vessel of the United States, and that the lien may be enforced under the provisions of the SAA. This is wrong.

The SAA is a limited waiver of sovereign immunity "[i]n cases where if such vessel were privately owned or operated, . . . a proceeding in admiralty could be maintained." 46 U.S.C. app. § 742. In order to avoid the actual arrest and seizure of government-owned vessels under the in rem process, the statute also provides that, "[i]f the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained." 46 U.S.C. app. § 743.

The SAA and the foregoing provisions do not themselves provide a cause of action against the United States, but merely operate to waive the sovereign immunity of the Government in admiralty suits. See, e.g., Nelson v. United States, 639 F.2d 469, 473 (9th Cir. 1980). The SAA "merely provides a jurisdictional hook upon which to base a traditional admiralty claim." Trautman v. Buck Steber, Inc., 693 F.2d 440, 444 (5th Cir. 1982); see Williams v. Central Gulf Lines, 874 F.2d 1058, 1059-60 (5th Cir. 1989); Blanco v. United States, 775 F.2d 53, 63 n.8 (2d Cir. 1985).

Additionally, the SAA also preserves to the United States "the benefits of all exemptions

and of all limitations of liability accorded by law to the owners . . . of vessels." 46 U.S.C. app. § 746. One of those entitled defenses includes the exclusion of public vessels from the MCILA.

Thus, a Plaintiff suing under the SAA must look to a <u>separate source of liability</u> recognized by admiralty law. Stated another way, the SAA merely provides the keys which allow a maritime Plaintiff to open the locks of subject matter jurisdiction; once the jurisdictional keys are turned and the Plaintiff enters the federal courthouse, he must then find a cause of action permitted under the substantive maritime law. But the government never gives up the defenses or exclusions that a similarly situated private party may be entitled to, merely because the SAA provides a waiver of sovereign immunity.

II.  **The Substantive Maritime Law: the MCILA Expressly Excludes Public Vessels.**

"In rem maritime actions are available 'only in connection with a maritime lien.'" <u>All Pacific Trading, Inc. v. M/V HANJIN YOSU</u>, 7 F.3d 1427, 1431 (9th Cir. 1993), quoting <u>Hurley v. Ace Maritime Corp.</u>, 927 F.2d 493, 496 (9th Cir. 1991). Hence, <u>if</u> a Plaintiff (or, in the maritime terminology, a libelant) has a maritime lien on a vessel or other property, such lien is enforceable by an action <u>in rem</u>. As detailed in the government's brief supporting its Motion to Dismiss, the MCILA specifically excludes maritime liens for necessaries against public vessels. The applicable provision of the Act states:

> (a) **Except as provided in subsection b of this section**, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner --
>
>    (1) has a maritime lien on the vessel;
>
>    (2) may bring a civil action in rem to enforce the lien; and

>   (3) is not required to allege or prove in the action that credit was given to the vessel.

(b) **This section does not apply to a public vessel.**

46 U.S.C. § 31342 [Emphasis added].

It should be noted that by its language, the MCILA, in subsection (a) of 46 U.S.C. § 31342, both (1) recognizes the existence of a lien for necessaries **and** (2) provides the remedy, a civil action in rem. The provision exempting public vessels in subsection (b) applies to the **entire section**, including all parts of subsection (a). The statute therefore not only prohibits an in rem action against a public vessel, but also exempts public vessels from the provision defining when a person has a maritime lien in the first instance. In other words, the "public vessels exception" applies to the entire cause of action, including both the right **and** the remedy.

As stated, the SAA does not supply the missing cause of action because the SAA merely defines the scope of the Government's waiver of sovereign immunity. See Williams, supra, 874 F.2d at 1059-60; Blanco, supra, 775 F.2d at 63 n.8. A Plaintiff must look to a separate source of liability, such as contract, tort, or statute, to recover. None exists here.

Thus, while the waiver of sovereign immunity applies to any claim in which a private shipowner would be liable in admiralty, the available causes of action against the United States are narrower, because in the case of "necessaries" provided to a public vessel, Congress has expressly eliminated the maritime lien as a cause of action.

In this case, the Court's inquiry should be at an end, along with the Plaintiff's action against the United States. However, in reply to Plaintiff's Opposition, an examination of the legislative history leads to the same result.

The MCILA replaced the earlier Maritime Lien Act, 46 U.S.C. §§ 971 et seq., which

contained no explicit exception for maritime liens on public vessels. The Maritime Lien Act was repealed, effective January 1, 1989. Pub. L. 100-710, Title 1, Section 106(b)(2), 102 Stat. 4752 (1988) (Set out as a note preceding 46 U.S.C. § 2101.) By the same law, the MCILA was enacted, to take effect on the same date. Id. § 107(e). (Set out as a note following 46 U.S.C. § 30101.)

As originally enacted, the MCILA contained slightly different language at Section 31342, but had the same effect with regard to public vessels:

(a) A person providing necessaries to a vessel (except a public vessel) on the order of a person listed in section 31341 of this title or a person authorized by the owner -

    (1) has a maritime lien on the vessel;

    (2) may bring a civil action in rem to enforce the lien; and

    (3) is not required to allege or prove in the action that credit was given to the vessel.

Pub. L. 100-710, Title I, Section 102(c), 102 Stat. 4748 (1988).

A technical amendment to Section 31342, made effective on December 12, 1989, by Sections 303(6) and 309 of the Coast Guard Authorization Act of 1989, Pub. L. 101-225, 103 Stat. 1924, 1926, made the statute read as it does in its present form. The technical amendment shifted the exception for public vessels from a parenthetical expression in subsection (a), to the present, more explicit, separate subparagraph (b). Lest there be any doubt about Congress' intent, the analysis of the amendment by the Committee on Merchant Marine and Fisheries states unequivocally:

> Section 31342 has been rewritten by deleting the parenthetical provisions relating to excluding public vessels from the application of the existing law and replacing it with a new subsection (b) to ensure clarity. **This is not a substantive change but simply makes more explicit the long established rule of law prohibiting maritime liens against public vessels. It further clarifies the existing law that**

5

> a claim may not be brought either <u>in personam</u> or <u>in rem</u> on a maritime lien theory against a public vessel. This section does not affect a cause of action against the United States based on a valid maritime contract.

135 Cong. Record - House 9308, 9312 (November 21, 1989) (emphasis added). If one could not garner the intent of Congress from the plain, unequivocal language of the statute, then the highlighted section of the legislative history completely removed all obstacles to understanding.

As support for its argument, the Plaintiff substantially relies upon the holding in <u>Bonanni Ship Supply, Inc. v. United States</u>, 959 F.2d 1558 (11th Cir. 1992). The <u>Bonanni</u> court determined that the Eleventh Circuit's prior holdings in <u>Stevens Technical Services, Inc. v. United States</u>, 913 F.2d 1521 (11th Cir. 1990), and <u>Marine Coatings of Alabama, Inc. v. United States</u>, 932 F.2d 1370 (11th Cir. 1991) were in conflict with the language of MCILA section 31342 -- which is the very section that precludes a maritime lien for necessaries against a public vessel.[1]

In what can only be described as a remarkable caveat, the <u>Bonanni</u> panel overtly expressed its misgivings as to the correctness of the Eleventh Circuit's two pre-MCILA cases:

> Given the clear desire of Congress to exempt public vessels from coverage under the maritime lien provisions of the MCILA, however, reconsideration of the rule announced in <u>Stevens Technical</u> and <u>Marine Coatings</u> by this court en banc may be in order.

<u>Bonanni</u>, <u>id.</u>, 959 F.2d at 1564, n.11. The <u>Bonanni</u> court nevertheless felt bound by the eleventh Circuit's own prior decisions, a decision made easier for the Court as it ultimately ruled in favor of the Government on the separate basis that no maritime lien existed under the facts of the case.

We also point out that the Eleventh Circuit's initial error can be traced to its decision in

---

[1] Neither <u>Stevens</u> nor <u>Marine Coatings</u> were decided under the MCILA, which applies to this case and binds this Court.

6

Stevens Technical Services, which relied upon a misreading and/or overreading of Canadian Aviator, Ltd. v. United States, 324 U.S. 215 (1945). In 1945, the Supreme Court held that the Public Vessels Act (PVA), like the SAA, was intended to impose the same liability on the United States -- apart from seizure or arrest of a public vessel -- as is imposed by the admiralty law on a private shipowner. Canadian Aviator, Ltd., id., 324 U.S. at 226-28 (1945). Under this rationale, an in personam action under the PVA could proceed on principles of in rem liability if an in rem action could have been brought against a private vessel owner. Id. at 226-27.

But, the breakdown in the Eleventh Circuit's reliance on Canadian Aviator in this context is that the latter case involved a **tort** claim -- it did **not** involve a claim for "necessaries." In fact, the specific issue in that case was whether the PVA authorized a suit for negligent operation of a government patrol boat, even though the boat and the damaged vessel never touched. Finding that, under general admiralty law, tort liability does not require physical contact, id. at 228, n. 31, the Court held that the same rule applied to the United States under the PVA. A review of Canadian Aviator reveals the following narrow holding:

> The consent to suit in the [PVA] thus extends to cases where the **negligence** of the personnel of a public vessel in the operation of the vessel causes damage to other ships, their cargos, and personnel, regardless of physical contact between the two ships, **and where principles of admiralty law impose liability on private parties.**

Canadian Aviator, Ltd., id., 324 U.S. at 224-25 (emphasis added). Thus, in Canadian Aviator the PVA provided the "jurisdictional hook", while general maritime law (maritime tort law) provided the cause of action.

The MCILA specifies that "damages arising out of maritime tort" (among other types of claims) constitute a "preferred maritime lien," 46 U.S.C. § 31301(5)(B). Neither the quoted section nor any other portion of the MCILA in any way distinguishes "maritime torts" caused by

"private vessels" from maritime torts caused by "public vessels." By contrast, the **only** type of lien under the MCILA which differentiates between "private vessels" (i.e., provides a lien) and "public vessels" (i.e., precludes a lien) is the maritime lien for "necessaries." 46 U.S.C. § 31342(b), quoted supra. As opposed to the substantive maritime law tort claim in Canadian Aviator, there is no maritime law claim under the MCILA for "necessaries" as against a public vessel which can be hung on the SAA "jurisdictional hook."

This Court obviously is not bound by the Eleventh Circuit, particularly when a panel of that court expressed such uneasiness with its own circuit decision as to recognize that they violate the "clear desire of Congress" and to invite en banc review. Rather, this Court should rely on its prior rejection of Plaintiff's theory in Sipco Services & Marine, Inc. v. Bethlehem Steel Corp., 892 F. Supp. 129 (D. Md. 1995), as discussed in the government's Motion to Dismiss.

## CONCLUSION

For the reasons stated above, the United States' Motion to Dismiss should be granted.

Dated: February 24, 2003.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

THOMAS M. DIBIAGIO
United States Attorney

THOMAS F. CORCORAN
Assistant U.S. Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, MD 21201-2692
Tel: 410-209-4800
Fax: 410-962-2310

*[signature]*

GREGG A. CERVI, Trial Attorney
PETER F. FROST, Senior Admiralty Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC  20044-4271
Telephone: (202) 616-4033 (Cervi)
Telephone: (202) 616-4031 (Frost)
Facsimile: (202) 616-4159

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Memorandum in Support of the United States' Motion to Dismiss was delivered via U.S. Mail postage pre-paid, this 24th day of February, 2003, addressed to the following counsel of record:

Edward J. Baines
Patrick E. Clark
Saul Ewing
100 South Charles St., 16th Floor
Baltimore, MD 21201-2773
Tel: 410-332-8600
Fax: 410-332-8185

I. David Cherniak
Lawrence J. Seiter
Johnstone, Adams, Bailey, Gordon and Harris, LLC
P.O. Box 1988
Mobile, AL 36633
Tel: 251-432-7682
Fax: 251-432-0712

Michael Schatzow
Tracey Cohen Paliath
Venable Baetjer and Howard LLP
Two Hopkins Plaza, Suite 1800
Baltimore MD 21201
(410) 244-7400
(410) 244-7742 (fax)

Richard M. Kremen
Jodie Elizabeth Buchman
Piper Rudnick LLP
6225 Smith Ave.
Baltimore, MD 21209-3600
Tel: (410) 580-3000
Fax: (410) 580-3001

John P. Amato, Esq.
Hahn & Hessen LLP
488 Madison Ave.
New York, NY 10022

GREGG A. CERVI

Copy to: Thomas Corcoran, Assistant U.S. Attorney