IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

|  |  |  |
|---|---|---|
| INTERNATIONAL MARINE & INDUSTRIAL APPLICATORS, INC., | ) ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | Case No. MJG 02-CV-3542 |
| UNITED STATES OF AMERICA, BALTIMORE MARINE INDUSTRIES, INC., and HELLER FINANCIAL, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## THIRD AMENDED COMPLAINT

The Plaintiff, through its undersigned counsel, amends its complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to read as follows:

1.      International Marine & Industrial Applicators, Inc. ("IMIA"), is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Mobile, Alabama.

2.      Defendant, United States of America ("USA"), is a sovereign which has consented to be sued under the Suits In Admiralty Act, 46 U.S.C. § 742 et. seq.

3.      Defendant, Baltimore Marine Industries, Inc. ("BMI"), is a corporation organized under the laws of the State of Delaware with a principal place of business in Wilmington, Delaware.

4. Defendant, Heller Financial, Inc. ("Heller"), is a corporation organized under the laws of the State of Delaware, with a principal place of business in Chicago, Illinois.

5. The jurisdiction of this action arises under the Suits In Admiralty Act, 46 U.S.C. § 742, et. seq., the Maritime Commercial Instruments and Liens Vessel Identification Systems Act, 46 U. S. C. § 31301 et. seq., Rule 9(h) of the Federal Rules of Civil Procedure, and Rule C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

6. For certain of the causes of action, stated herein, jurisdiction is also founded upon diversity in that the claims stated arise between citizens of different states with the amount in controversy in excess of $75,000.00 pursuant to 28 U.S.C. § 1332.

7. Defendant USA, at all times material hereto, owned, chartered, and/or operated the vessel RESOLUTE ("AFDM-10"). BMI contracted with USA to furnish certain repairs to said vessel.

8. On or about the 9th day of September, 2000, BMI, with full knowledge, consent and authority of the USA, engaged IMIA to perform services as a subcontractor on the RESOLUTE (AFDM-10). This vessel had been, or was engaged in, commerce upon the navigable waters of the United States at all material times.

9. At all times material hereto, BMI was authorized by the USA to procure repairs and maintenance work on these vessels, which were necessities furnished to the vessels.

10. IMIA has performed repairs and maintenance on this vessel, including staging, surface preparation, coating and cleaning. IMIA has performed all services required of it, under its purchase order. All of IMIA's work has been accepted by the USA.

11. Prior to the time IMIA commenced work on the vessel, Defendant USA was aware that Plaintiff IMIA would be performing these services. BMI was authorized, by the USA, the owner of the vessel, to procure the services of IMIA upon the vessel in the owner's behalf. Authorized representatives of the USA met with IMIA prior to the times such services were rendered, during the time they were rendered, and after they were rendered, to discuss such services.

12. At all times material, before, during and after the rendition of such services by IMIA, Defendant USA was aware that IMIA would be rendering such services and that IMIA was relying upon the credit of the vessel for payment.

13. Following the completion of its services on the RESOLUTE, IMIA submitted to the USA, through BMI, its Change Order Request in the amount of $2,181,398.12 for increased work and changes on the RESOLUTE, beyond the scope of IMIA's original purchase order. Said Change Order sought payment for direct job costs only, and did not include claims for unliquidated amounts. IMIA is informed and believes that BMI, in forwarding IMIA's Change Order Request to USA, added thereto its own requests for additional sums, the exact nature and amount of which are unknown to IMIA.

14. In June 2002, and in the months thereafter, IMIA reiterated to USA, that it continued to rely on the credit of the vessel for payment.

15. During the summer of 2002, the USA knew, or should have known, that BMI was experiencing financial problems.

16. In October, 2002, BMI consummated a settlement agreement with the USA for sums which included IMIA's Change Order Request. IMIA only learned about the payment

through collateral sources. BMI attempted to conceal the fact of the payment and the details thereof from IMIA. These actions were in direct contradiction to BMI's repeated promises made to IMIA that it would be kept informed of the progress of settlement negotiations and that BMI would consult with IMIA prior to entering into any settlement agreement with the USA.

17. IMIA was also informed and believes that the payment from the USA to BMI, for IMIA's work, was based upon the representations by BMI to USA that upon receipt of payment from the USA, it would immediately deliver those sums owed to IMIA.

18. On or about October 9, 2002, the USA, without notice to IMIA, delivered to BMI the sums to which IMIA was entitled for its Change Order Request on the RESOLUTE. Despite knowledge that IMIA is entitled to receive these funds, BMI has refused to pay these funds to IMIA.

19. BMI has since represented to IMIA that Defendant Heller, who claims to be a secured lender of BMI, claims a security interest in such funds, and has either taken possession of those funds or has exerted such control over those funds, so as to as prevent BMI from disbursing the same to IMIA.

20. The sums unpaid to IMIA for its work on the vessel is the reasonable value of the services which IMIA rendered upon the vessel.

21. But for the provisions of 46 U.S.C. § 41, IMIA could maintain an <u>in rem</u> action against the USA for the services rendered on those vessels.

## FIRST CAUSE OF ACTION
### (Under the Suits In Admiralty Act Against the USA)

22.     Claiming under the Suits In Admiralty Act, IMIA adopts paragraphs 1-21 above and adds thereto the following.

23.     The USA is indebted to IMIA in the total amount of $2,181,398.12, under the in personam provisions of 46 U.S.C. § 741 et. seq., for necessaries furnished the RESOLUTE.

24.     IMIA has relied on the credit of the three vessels. BMI procured IMIA's services with the full knowledge and consent and authority of the USA. IMIA is entitled to recover of the USA the sum of $2,181,398.12 together with interest, costs of court and such other amounts as this Court determines IMIA is due from the USA.

Wherefore, IMIA demands judgment against the USA in the amount of $2,181,398.12 together with interest and costs.

## SECOND CAUSE OF ACTION
### (Against BMI for Breach of Contract)

25. IMIA adopts the provisions of paragraphs 1-24 above and adds thereto the following:

26. IMIA, having rendered services pursuant to its purchase orders and subcontracts with BMI, described above, is entitled to the sum of $2,181,398.12, for its services under said contracts.

27. IMIA has performed all of its obligations under said contracts and BMI has breached the same by failure to pay IMIA for its services rendered thereunder.

Wherefore, IMIA demands Judgment against BMI in the amount of $2,181,398.12 together with interest and costs.

## THIRD CAUSE OF ACTION
### (Against BMI for Work and Labor Performed and Materials Furnished)

28. IMIA adopts the allegations of paragraphs 1-27 above as if fully set out herein and adds thereto the following:

29. IMIA claims $2,181,398.12 of BMI for work and labor performed and materials furnished to the Defendant BMI, at its request, at the times and dates alleged above.

Wherefore, IMIA claims judgment against BMI in the amount of $2,181,398.12 together with interest and costs, as aforesaid.

## FOURTH CAUSE OF ACTION
### (Against BMI and Heller to Establish a Constructive Trust upon the Proceeds of IMIA's Request for Change Order in the Hands of BMI and/or Heller)

30.     IMIA adopts paragraphs 1-29 above and adds thereto the following:

31.     Monies in the amount of $2,181,398.12 held by BMI and/or Heller are the proceeds of IMIA's Request for Change Order, for work performed by IMIA on the RESOLUTE.

32.     Such sums were delivered by the USA to BMI. Any delivery of the funds to Heller by BMI, as well as the continued possession of the funds by BMI, is the direct and proximate result of BMI's fraudulent misrepresentations to IMIA and the USA that such monies would be immediately delivered to IMIA upon receipt.

33.     BMI and/or Heller have been unjustly enriched by their possession of such monies which are the property of the Plaintiff.

Wherefore, the Plaintiff respectfully prays that this Honorable Court:

    A.     Charge upon BMI and Heller a Constructive Trust upon the sum of $2,181,398.12 for the benefit of IMIA;

    B.     Order BMI and Heller, as Constructive Trustees, to immediately pay over and deliver such sums to IMIA; and

    C.     Grant IMIA such costs and other relief as to which it might be entitled.

## FIFTH CAUSE OF ACTION
### (Against BMI and Heller to Perfect a Lien upon the
### Proceeds of IMIA's Request for Change Order, in the
### Hands of BMI and Heller, under the Suits in Admiralty Act)

34. IMIA adopts the allegations of paragraphs 1-33 above and adds thereto the following:

35. Under the provisions of the Suits in Admiralty Act, as set out above, IMIA, as one entitled to a Maritime Lien, has a claim in personam against USA.

36. The lien and/or in personam rights of IMIA, by operation of law, have attached to the proceeds, in the amount of $2,181,398.12 in the hands of BMI and Heller.

Wherefore, the premises considered, the Plaintiff IMIA respectfully prays that this Court will order that IMIA's lien under the Suits in Admiralty Act be perfected, that the proceeds of that lien in the amount of $2,181,398.12 in the hands of BMI and/or Heller be transferred, and order those sums paid over to IMIA together with interest and costs of Court. IMIA prays for such other and further relief as to which it may be entitled.

## SIXTH CAUSE OF ACTION
### (Against BMI and Heller to Perfect I MIA's Lien
### Pursuant to § 16-202(b) of the Maryland Code Annotated,
### Commercial Law Article and Transfer the same to the Proceeds)

37. IMIA adopts the allegations of paragraphs 1-36 above and adds thereto the following:

38. In addition to the lien rights of the Plaintiff under the Suits in Admiralty Act, IMIA is entitled to a lien upon the proceeds of the claim paid by the USA to BMI pursuant to Maryland Code annotated, Commercial Law Article, § 16-202(b).

39. The $2,181,398.12 which BMI and/or Heller hold is a sum to which the liens of IMIA have attached by operation of law.

### SEVENTH CAUSE OF ACTION
(Against BMI and Heller to Establish An Equitable Lien
upon the Proceeds of IMIA's Request for Change
Order in the Hands of BMI and/or Heller)

40. IMIA adopts paragraphs 1-39 above and adds thereto the following:

41. Monies in the amount of $2,181,398.12 held by BMI and/or Heller are the proceeds of IMIA's Request for Change Order, for work performed by IMIA on the RESOLUTE.

42. Such sums were delivered by the USA to BMI. Any delivery of the funds to Heller by BMI, as well as the continued possession of the funds by BMI, is the direct and proximate result of BMI's fraudulent misrepresentations to IMIA and the USA that such monies would be immediately delivered to IMIA upon receipt.

43. IMIA had an equitable lien or interest in the contract proceeds retained by the USA before said proceeds were delivered by USA to BMI.

44. IMIA retains an equitable lien in the contract proceeds now in the hands of Heller and/or BMI. BMI and Heller hold the contract proceeds in an equitable trust for the benefit of IMIA.

45. Because of IMIA's equitable lien upon the proceeds in question, Heller's Article 9 security interest either did not attach to said funds or is subordinate to IMIA's lien.

46. BMI and/or Heller have been unjustly enriched by their possession of such monies which are the property of the Plaintiff.

Wherefore, the Plaintiff respectfully prays that this Honorable Court:

A. Charge upon BMI and Heller an equitable lien upon the sum of $2,181,398.12 for the benefit of IMIA;

B. Order BMI and Heller, as Equitable Trustees, to immediately pay over and deliver such sums to IMIA; and

C. Grant IMIA such costs and other relief as to which it might be entitled.

Wherefore, the premises considered, the Plaintiff, IMIA, respectfully prays that this honorable Court will render a decree perfecting the lien of IMIA under the salient provisions of the Maryland Code Annotated, Commercial Law Section, transferring that lien to the sum of $2,181, 398.12, in the hands of BMI and/or Heller, and order those sums paid over to IMIA together with interest and costs of Court. IMIA prays for such other, further and different relief as to which it may be entitled, the premises considered.

### EIGHTH CAUSE OF ACTION
(Against the United States of America for An Equitable Lien or Interest upon the Proceeds of IMIA's Request for Change Order Wrongfully Disbursed to BMI by USA)

47. IMIA adopts paragraphs 1-46 above and adds thereto the following:

48. BMI submitted its final payment request to USA which included IMIA's Request for Change Order in the amount of $2,181,398.12.

49. IMIA put USA on notice prior to USA's disbursement of the contract proceeds that BMI had not paid IMIA. (*See* Exhibit 1 hereto, Affidavit of James A. Kelley, and Exhibits 1A and 1B attached thereto).

50. IMIA further expressed to USA prior to payment of the contract proceeds that

IMIA believed that if USA made payment to BMI without appropriate provisions in place that IMIA would not receive payment.  (*See* Exhibit 1B)

51. USA became a stakeholder with respect to the contract proceeds not yet expended when it received notification from IMIA that it had not been paid along with the fact that IMIA expressed doubt to USA that if BMI was paid the proceeds directly, IMIA would likely never get paid.

52. As a stakeholder, USA was not free to pay BMI when IMIA had given adequate notice that it had a competing claim to the fund.

53. Notwithstanding USA's stakeholder status, USA paid the unexpended contract proceeds to BMI which included IMIA's Request for Change Order in the amount of $2,181,398.12.

54. Any delivery of the unexpended contract proceeds to BMI was a direct and proximate result of USA's failure to adhere to its stakeholder responsibilities.

55. IMIA had an equitable lien or interest in the contract proceeds retained by the USA before said proceeds were delivered by USA to BMI.

56. USA wrongfully paid the unexpended contract proceeds to BMI which included IMIA's Request for Change Order in the amount of $2,181,398.12

Wherefore, the Plaintiff respectfully prays that this Honorable Court:

A. Charge upon USA an equitable lien or interest upon the sum of $2,181,398.12 for the benefit of IMIA;

B. Order USA, as Equitable Trustees, to immediately pay over and deliver such sums to IMIA; and

C.   Grant IMIA such costs and other relief as to which it might be entitled.

**PLAINTIFF RESPECTFULLY DEMANDS TRIAL BY JURY OF THOSE CAUSES OF ACTION WHICH BY LAW ARE TRIABLE BY A JURY.**

/s/
Edward J. Baines, Federal Bar No. 06776
Patrick E. Clark, Federal Bar No. 26628
Saul Ewing LLP
100 South Charles St., 16th Floor
Baltimore, Maryland 21201-2773
(410) 332-8600
(410) 332-8185 (fax)

Attorneys for Plaintiff

OF COUNSEL:
I. David Cherniak, Federal Bar No. CHERI8107
Lawrence J. Seiter, Federal Bar No. SEITL4720
Johnstone, Adams, Bailey, Gordon and Harris, LLC
P. O. Box 1988
Mobile, Alabama 36633
Tel.: (251/432-7682)
Fax: (251/432-0712)