**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| INTERNATIONAL MARINE & INDUSTRIAL APPLICATORS, INC., an Alabama Corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, and<br><br>BALTIMORE MARINE INDUSTRIES, INC., and<br><br>HELLER FINANCIAL, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. MJG-02CV-3542

**MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANT HELLER
FINANCIAL, INC. TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant Heller Financial, Inc. ("Heller"), by its undersigned attorneys, hereby submits

this memorandum in support of its Motion to Dismiss the Third Amended Complaint (the "Third

Amended Complaint") filed by the Plaintiff International Marine & Industrial Applicators, Inc.

("IMIA").  In support hereof, Heller states:

I.    INTRODUCTION

On October 29, 2002, IMIA filed the Complaint against Baltimore Marine Industries, Inc.

("BMI"), the United States of America ("USA") and Heller.  IMIA subsequently filed an

Amended Complaint and Second Amended Complaint.  The USA has filed motions to dismiss

the Amended Complaint and Second Amended Complaint.  Heller has filed a motion to dismiss

the Second Amended Complaint.  Recognizing the legal deficiencies in its original Complaint,

Amended Complaint and Second Amended Complaint, IMIA has filed a Third Amended

Complaint.  IMIA's amended complaints do not substantially alter the causes of action against the parties.  Rather, each amended complaint simply has added a new cause of action while failing to curb the legal deficiencies present in the prior complaints.  In particular, IMIA still has failed to identify sufficient facts to support its claim that it holds a superior interest in the proceeds paid by BMI to Heller, BMI's senior lien creditor.

Heller, a secured creditor of defendant BMI that advanced several million dollars in loans to enable BMI to perform government contracts and pay subcontractors such as IMIA, received the proceeds of its collateral when the defendant USA made a contractual payment justly due BMI under a government contract to repair the public vessel RESOLUTE.  IMIA, an unsecured creditor of BMI that provided work as a subcontractor on the public vessel, seeks in this action to, among other things, impose a constructive trust, federal maritime lien or equitable lien on the monies that were paid by the USA and are now allegedly in Heller's possession or under its control.  See IMIA's fourth, fifth and sixth causes of action in its Third Amended Complaint.  Because IMIA's causes of action against Heller are not supported by either federal or state law, Heller's motion should be granted.[1]

II.    FACTUAL BACKGROUND

For the purposes of this motion only, the following facts are presumed to be true:[2]

1.    IMIA admits that Heller claims a perfected security interest in the proceeds pursuant to Title 9 of Md. Commercial Law Code Ann. § 9-101, et seq. (2002) ("Article 9").  See

---

[1]  IMIA has filed amended pleadings after motions to dismiss were filed by the USA and Heller.  The Court denied those motions, without prejudice, to afford IMIA one last time to file a third amended pleading.

[2]  While Heller agrees on this motion to assume the truth of the facts alleged in the Third Amended Complaint, Heller believes that many of the allegations are wrong.  Heller further reserves the

*(footnote continued to next page)*

¶¶ 19, 33 and 43 of the Third Amended Complaint.  Heller, in fact, is a secured lender of BMI with a perfected security interest in, among other things, all of BMI's accounts receivable.

2.    On or about September 9, 2000 (almost four (4) months after Heller filed its financing statement), BMI, with the USA' knowledge and consent, subcontracted with IMIA to perform some of the repair work on the public vessel, RESOLUTE.  Third Amended Complaint, ¶ 8.

3.    IMIA, after completing its work, submitted to BMI a change order request in the amount of $2,181,398.12.  Third Amended Complaint, ¶ 13.

4.    BMI then submitted its own change order request to the USA that included IMIA's change order request delivered to BMI.  Id.

5.    In October 2002, the USA and BMI settled BMI's change order request.  Third Amended Complaint, ¶16.

6.    The USA then agreed to pay BMI an unspecified amount based upon BMI's representations that it would pay IMIA the monies to which it was allegedly entitled to receive. Third Amended Complaint, ¶ 17.

7.    On October 9, 2002, the USA delivered to BMI the settlement sum on  BMI's change order request.  Third Amended Complaint, ¶ 18.

8.    Heller eventually received the monies that the USA remitted to BMI, or is otherwise preventing BMI from disbursing such monies to IMIA.  Third Amended Complaint, ¶ 19.

---

*(footnote continued from previous page)*
right to contest IMIA's version of the facts if any further proceedings are conducted in this case.

9.    IMIA then commenced this action claiming it has the right to impose a constructive trust, or enforce a federal maritime or equitable lien on the monies Heller received or is preventing BMI from disbursing to IMIA.  Third Amended Complaint, fourth, fifth and sixth causes of action.

## III.    ARGUMENT

### IMIA IS NOT ENTITLED TO FORCE HELLER TO DISGORGE THE PROCEEDS OF ITS COLLATERAL

#### A.    Standard For Dismissal Under Fed. R. Civ. P 12(b)(6)

When "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the claim must be dismissed for failing to state a cause of action.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  On a motion to dismiss, the trial court must accept all of the complaint's allegations as true.  Caddell v. Singer, 652 F.2d 393, 394 (4th Cir. 1981).  While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.  Faulkner Advertising Assoc., Inc. v. Nissan Motor Corp., 945 F.2d 694 (4th Cir. 1991).  Thus, courts routinely grant motions to dismiss where a plaintiff's complaint contains only self-serving legal conclusions that are unsupported by sufficient factual allegations from which such legal conclusions can be reasonably reached.  District 28, United Mine Workers v. Wellmore Coal Corp., 609 F.2d 1083, 1086 (4th Cir. 1979).

In this case, IMIA claims to hold an equitable lien on the monies that were paid by the USA to BMI in satisfaction of the USA' obligations to BMI under a government contract.  According to IMIA, it has the right to attempt to trace the proceeds of IMIA's alleged liens into Heller's hands and then force Heller to disgorge the proceeds pursuant to a constructive trust theory.  Neither federal nor state law support IMIA's claims.

**B.    The Facts Do Not Support a Constructive Trust Claim Against Heller**

  **1.    IMIA has not alleged facts supporting imposition of constructive trust**

  A constructive trust, under Maryland law, is the "remedy employed by the court in equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of that property." <u>Doe v. Doe</u>, 122 Md.App. 295, 361, 712 A.2d 132 (1998), *rev'd on other grounds*, 358 Md. 113, 747 A.2d 617 (2000).  Courts will apply this remedy "by operation of law when property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding title to retain it." <u>Id.</u> (citing <u>Wimmer v. Wimmer</u>, 287 Md. 663, 668, 414 A.2d 1254 (1980)).  In order to impose a constructive trust, there must be "clear and convincing evidence not only of wrongdoing in the acquisition, but also of the circumstances that render it inequitable for the holder of the legal title to retain the beneficial interest." <u>Id.</u>

  IMIA has previously asserted that its right to a constructive trust (under an equitable lien theory) from Heller (the secured lender) is based upon Maryland state law.  There is no Maryland case, however, in which a secured lender has been forced to disgorge a payment received from the government where the secured lender committed no wrongful conduct in connection with its receipt of such payment.  Because Heller did not engage in any wrongful conduct, a fact conceded to by IMIA in the Third Amended Complaint, IMIA is precluded from recovering as a matter of law, on a constructive trust theory.  While Maryland courts will force a party, under equitable principles, to disgorge property where that party (a) acquired the property through fraud, duress, undue influence, mistake or through a breach of fiduciary duty, or (b) would be unjustly enriched if permitted to retain the property, <u>see</u> <u>Wimmer v. Wimmer</u>, 287 Md. 663, 668 (1980), constructive trust law requires the focus to be on Heller's conduct and equitable

position – not BMI's – as illustrated by a detailed analysis of <u>Starleper v. Hamilton</u>, 106 Md.App. 632, 666 A.2d 867 (1995).

In <u>Starleper</u>, as part of a marital settlement agreement with his ex-wife, a husband was contractually obligated to keep in full force and effect an existing life insurance policy for the benefit of the couple's minor child. In violation of that express agreement, the husband, after remarrying, removed the ex-wife as beneficiary and named the husband's new wife as the policy's primary beneficiary. After the husband died (and the life insurance proceeds were paid to the husband's second wife), the first wife, as champion of the minor child, sued to impose a constructive trust against the life insurance proceeds claiming that the second wife would be unjustly enriched if permitted to keep the proceeds. <u>Starleper</u>, 666 A.2d at 868. In defense, the second wife claimed that she would not be unjustly enriched since the life insurance proceeds constituted the repayment of a loan that the second wife allegedly had made to the deceased husband. <u>Id</u>. at 869. In ruling in favor of the first wife, the court held that the second wife's loan to the husband conferred no economic benefit to the minor child and therefore it would be inequitable for the second wife to retain the proceeds of the policy. <u>Id</u>. at 871.

<u>Starleper</u>'s rational was clearly not founded on the wrongful conduct of the deceased husband, or the fact that his estate would be unjustly enriched if the second wife was to be permitted to keep the monies. To the contrary, the <u>Starleper</u> court focused on the first wife's allegation that the second wife would be unjustly enriched. <u>Id.</u> ("we fail to see how [the second wife's] loans or payments would affect the equitable balance"). Accordingly, the holding in <u>Starleper</u> does not support IMIA's constructive trust claim against Heller since IMIA has only alleged that BMI committed some wrong or would be unjustly enriched.

The facts alleged by IMIA in its Third Amended Complaint and as to which this Court may take judicial notice (such as Heller's full documented security interest), are fatal to IMIA's constructive trust claim against Heller.  Heller has done nothing improper, and it would not, as a matter of law, be unjustly enriched if it is permitted to keep the proceeds of its collateral. Heller's rights to the proceeds of its collateral were documented and perfected well before BMI even hired IMIA as a subcontractor to perform work on the RESOLUTE.  IMIA, therefore, knew or should have known that Heller had superior rights to the proceeds.  Unlike the second wife in Starleper, whose loan did not benefit the minor child one iota, Heller loaned millions of dollars to BMI enabling it to perform government contracts and pay subcontractors, including IMIA. Thus, IMIA received a tangible economic benefit from Heller's loans.

IMIA's allegations also fail to sustain a constructive trust claim because the payment was made by the USA prior to any assertion by IMIA that BMI defaulted on any agreement that it had with IMIA.  In the Third Amended Complaint, IMIA does not set forth any allegations asserting that BMI defaulted on its obligations under its agreement with IMIA.  This is significant since Maryland law specifically provides that a secured lender is entitled to keep the payment if it was made prior to an allegation or evidence that the contractor defaulted under the government contract.  See e.g., Finance Company of America v. United States Fidelity and Guaranty Company, 277 Md. 177, 185-86 (1976) (the secured lender's lien attaches to all payments due from the government entitling the secured lender to retain monies paid by the government prior to allegation or evidence of the contractor's default).  Since IMIA submits no allegations in the Third Amended Complaint to even suggest that BMI defaulted on any agreement with IMIA prior to the turnover of funds to Heller, IMIA's constructive trust theory fails.

### 2.    Constructive Trust fails because IMIA cannot trace the funds

IMIA also failed to satisfy the necessary prerequisites for establishing its alleged right to a constructive trust because it cannot trace the funds over which it seeks to impose the trust. Maryland law is well established that the party attempting to impose a constructive trust bears the burden of tracing the funds over which it asserts an interest. See Brown v. Coleman, 318 Md. 56, 68, 566 A.2d 1091 (1989); Drovers' Bank v. Roller, 85 Md. 495, 501, 37 A. 30, 32 (1897). This bright lined rule is based on the concept that "a claimant has no right to take from creditors that which he cannot show to be equitably his own." Brown, 318 Md. at 68-69, 566 A.2d 1091 (citing Drovers' Bank, 85 Md. at 501, 37 A. at 32).

In the Third Amended Complaint, IMIA does not claim that the funds allegedly paid to Heller were segregated or could be traced. In fact, the funds received by Heller were simply received in the ordinary course of business, commingled with other funds and applied against BMI's loan balance. In the Third Amended Complaint, IMIA alleges only that, upon its information and belief, Heller has "either taken possession of those funds or has exerted such control over those funds, so as to prevent BMI from disbursing the same to IMIA." Third Amended Complaint, ¶ 19. This blanket assertion, without any facts to support it, does not meet the tracing requirements imbedded in a claim for constructive trust. See Brown, 318 Md. at 68-69, 566 A.2d 1091; Drovers' Bank, 85 Md. at 501, 37 A. at 32.

### C.    IMIA's Maritime Lien Claim is Not Viable

The Maritime Commercial Instruments & Lien Act (the "MCILA") expressly bars maritime liens on public vessels as IMIA previously admitted in its opposition papers to the government's motion to dismiss. See IMIA's Memorandum in Opposition to the Motion to Dismiss of Defendants United States of America. Since there is no dispute that the RESOLUTE

is a public vessel, there can be no dispute that the MCILA's public vessel exclusion (46 U.S.C. § 31342[b]) is applicable and no maritime lien ever attached to the RESOLUTE. Accordingly, IMIA never had the right to seize the RESOLUTE and force it to be sold.

Nevertheless, IMIA has claimed that it has the right to proceed directly against the USA to obtain an in personam judgment in the amount of IMIA's claim for the unpaid repair work it performed on the RESOLUTE. IMIA fails to recognize that without a maritime lien, IMIA's *in personam* action under the Suits in Admiralty Act ("SAA"), 46 App. U.S.C.A. § 741 et seq., must fail.

Section 742 of the SAA waives sovereign immunity for applicable actions brought against the USA -- it does not provide an underlying cause of action against the USA. See Saint John Marine Co. v. United States, 92 F.3d 39 (2[d] Cir. 1996) ("[t]he waiver of sovereign immunity [under SAA] does not create or confer a cause of action"); Nelson v. United States, 639 F.2d 469 (9th Cir. 1980) (accord); E.J. Bartells Co. v. Northwest Marine, Inc., 1994 U.S. Dist. LEXIS 7212 (W.D. Wash. 1994) (accord). Here, since IMIA's underlying claim is based on its allegation of a maritime lien, which, as stated above, is barred by the MCILA, its SAA claim must correspondingly fail.

Despite the MCILA being adopted in 1988, only one reported case in the Fourth Circuit has addressed this situation. In that decision, the Eastern District of Virginia rejected the plaintiff's claim and found that section 31342 of the MCILA barred *in personam* and *in rem* actions on a maritime lien theory against a public vessel. See Hopeman Brothers, Inc. v. USNS Concord, 898 F.Supp. 338 (E.D.Va. 1995) (adopting and approving magistrate's report in Hopeman Brothers, Inc. v. USNS Concord, 1995 U.S. Dist. LEXIS 14504 [E.D.Va. 1995]). As section 31342 of the MCILA is "unambiguous" in barring *in personam* and *in rem* actions on a

maritime lien theory against a public vessel (Hopeman Brothers, 1995 U.S. Dist. LEXIS 14504, at *6), it is not surprising that very few courts have addressed this type of cause of action. This Court should follow the reasoning of the Virginia court and similarly deny IMIA's claim.

Furthermore, outside of the Eleventh Circuit, every other court that has addressed the question of whether an *in personam* action under the SAA may be brought based on *in rem* principles of liability regarding a public vessel have categorically stated no. See Pactherm, Inc. v United States, 1994 U.S. Dist. LEXIS 8256 (N.D. Cal. 1994); E.J. Bartells Co., 1994 U.S. Dist. LEXIS 7212; I.T.O. Corp. v. United States, 1990 AMC 1439 (S.D. Tex. 1990). Additionally, the legislative history clearly demonstrates that Congress intended section 31342(b) of the MCILA to codify "'existing law that a claim may not be brought either *in personam* or *in rem* on a maritime lien theory against a public vessel.'" I.T.O. Corp., 1990 AMC 1439, quoting Congressional Record-House, p. 8312; see also Hopeman Brothers, 1995 U.S. Dist. LEXIS 14504, at *6 (MCILA "amendment was meant 'to clarify once and for all the fact that a claim may not be brought either in personal [sic] or in rem on a maritime lien theory against a public vessel'"), quoting 135 Cong. Rec. H9184 (daily ed. Nov. 20, 1989) (statement of Rep. Davis).

Only the Eleventh Circuit in Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558 (11th Cir. 1992) and the subsequent decisions that were required to follow that flawed decision have held otherwise. That decision is not binding on this Court and should not be considered persuasive authority since it is based on a flawed reading of legislative history and the product of a court stubbornly refusing to overrule its earlier decisions.

In Bonanni, the court held that *in personam* actions under the SAA based on *in rem* principles of liability were permissible against public vessels based on the court's belief that the adoption of the MCILA in 1998 did not change prior maritime law under the Federal Maritime

Lien Act and common law.  That belief was based a section of legislative history that states that section 31342 of the MCILA "'makes no substantive change to the law.'"  <u>Bonanni</u>, 959 F.2d at 1562, <u>quoting</u> H.Rep. No. 100-918, reprinted at 7  U.S.Code Cong. and  Admin.News, 100th Cong., 2d Sess. 6104, 6141 (1988).  Although the court acknowledged that Congress believed there was a "longstanding rule against the imposition of maritime liens against public vessel, and did not intend to alter legal rights and obligations that had existed under the old Maritime Lien Act," the court held that since there was no such "longstanding rule" in the Eleventh Circuit, there would continue to be no rule in the Eleventh Circuit since the MCILA "'makes no substantive change to the law.'"  <u>Bonanni</u>, 959 F.2d at 1562-63.  Since this type of reasoning is unsound and has previously been rejected by the Supreme Court,[3] <u>Bonanni</u> should not be followed by this Court.

Even the Eleventh Circuit in <u>Bonanni</u> noted that the rule it followed from previous cases should be reconsidered *en banc* since Congress intended to "exempt public vessels from coverage under the maritime lien provisions of the MCIL...."  <u>Bonanni</u>, 959 F.2d at 1564 n.11.  Moreover, in <u>Turecamo of Savannah, Inc. v. United </u>States, 36 F.3d 1083 (11th Cir. 1994), the 11th Circuit, although compelled to uphold <u>Bonanni</u>, held that "the rule announced in <u>Bonanni</u> may be appropriate for *en banc* reconsideration...."  36 F.3d at 1087.  Of the many reasons for

---

[3] In <u>Brown v. General Servs. Admin</u>, 425 U.S. 820 (1976), the Supreme Court held that when legislative history is examined to determine congressional intent behind the passage of a law, the "relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was."  <u>Brown</u>, 425 U.S. at 828.  The Supreme Court held that where Congress amended the 1964 Civil Rights Act based on its incorrect belief that "federal employees who were treated discriminatorily had no effective judicial remedy," that belief would be used to determine the affect of the amendment.  <u>Brown</u>, 425 U.S. at 828.  Thus, even if Congress was incorrect about maritime lien law and public vessels, its belief that the MCILA simply codified the rule against the imposition of maritime liens on public vessels must be followed, especially where it is conformity with the language of the MCILA.

suggesting *en* banc reconsideration, the court noted that (a) the review of legislative history in Bonanni was inaccurate and incomplete; (b) the legislative history indicates that Congress did intend the MCILA to "make substantive changes" to Maritime law; and (c) the legislative history "emphasizes Congress' intent that 'a claim may not be brought either in personam or in rem on a maritime lien theory against a public vessel.'"    Turecamo, 36 F.3d at 1087-88, quoting 135 Cong. Rec. 9312 (daily ed. Nov. 21, 1989).   Thus, this Court should not follow the rule stated in Bonanni, since not only is it a flawed decision, it is in doubt even in its own circuit.

Furthermore, even assuming IMIA is permitted to proceed under the SAA, the SAA only provides that "an appropriate  nonjury proceeding *in personam* may be brought **against the United States**." 46 App. U.S.C.A. § 742 (**emphasis added**).  The SAA gives no authorization to proceed against a third party who has received funds from the USA.  To the extent that IMIA's cause of action is based on *in rem* principles of liability, maritime lien holders only have the right seize the vessel, have it sold, and be "repaid the debt from the proceeds [of the sale]."  Equilease Corp. v. M/V SAMPSON, 793 F.2d 598, 602 (5th Cir. 1986); see also Silver Star Enters. v. SARAMACCA MV, 82 F.3d 666, 668 (5th Cir. 1996).  Since the RESOLUTE was not sold, the money given by USA to BMI and then to  Heller could not be the proceeds of the sale of the RESOLUTE and thus, IMIA has no specific rights to those funds.  Cf. CLC Equip. Co. v. Brewer (In re Value-Added Communications, Inc.), 139 F.3d 543, 546 (5th Cir. 1998) (proceeds does not include "the product of the use of the equipment," only "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds" under the U.C.C.); In re: S&J Holding Corp., 42 B.R. 249, 250 (Bankr. S.D. Fla. 1984) (cash obtained through video

games does not constitute proceeds under U.C.C.).[4]    Thus, if IMIA has any lien or lien-like interest, it must be satisfied by the USA directly and it does not attach to any specific funds in the hands of the USA, BMI or Heller.

Moreover, even assuming IMIA has the right to proceed against the USA to obtain an in personam judgment, that does not also mean that IMIA ever had a maritime lien on the general public funds that the USA used to pay BMI and which have been paid to Heller.  See, e.g., Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 263 (1998) ("sovereign immunity bars creditors from attaching or garnishing funds in the Treasury").  Instead, the USA, as sovereign, was always entitled to use general public funds to pay BMI unencumbered by any right that IMIA may have had to obtain a monetary judgment against the USA.  Thus, since general government funds are involved, IMIA never had any lien on such funds and does not have the right to sue the USA in this matter to force it to pay IMIA directly for having paid out general funds to BMI.  See, e.g., United States v. Munsey Trust Co., 332 U.S. 234, 241 (1947) ("laborers and materialmen do not have enforceable rights against the United States for their compensation").

Finally, even if the Court were to assume that IMIA may have had a valid maritime lien on the proceeds that were paid by the USA, that does not mean that IMIA has the right to trace the funds into Heller's hands and force it to disgorge those funds to IMIA.  Instead, even if there was a valid maritime lien on the funds, IMIA would only be able to force disgorgement if Heller committed some wrong to obtain possession of the funds or would be unjustly enriched if it is

---

[4]    Furthermore, unlike a privately owned vessel, such as a cruise ship or cargo carrier, which can generate revenue outside of the actual sale of the vessel, the RESOLUTE is not such a ship and does not generate any revenues.  Thus, the funds given by the USA to BMI are not proceeds

*(footnote continued to next page)*

permitted to keep the funds.  Since, as noted above, that is not the case, even if IMIA had a valid maritime lien on the funds, Heller is entitled to keep the funds since  IMIA's constructive trust claim and ability to trace the funds into Heller's hands is meritless.

### D.     IMIA's Equitable Lien Claim Fails

IMIA has previously admitted that Maryland common law fails to provide it with any rights to the funds in  Heller's hands under any state law equitable lien theory.  This is not surprising since there is no Maryland case law that provides for the imposition of any equitable lien against government contract payments tendered to an innocent secured lender when there are no allegations or evidence pointing to a default by the contractor prior to the payment.  <u>See Finance Company of America</u>, 277 Md. at 186.  Moreover, "there can be no existing [equitable] lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing for notice and a hearing (<u>i.e.</u>, a declaratory judgment action)."  <u>Scott & Wimbrow, Inc. v. Calwell</u>, 31 Md. App. 1, 6 (1976).  Accordingly, since, according to IMIA's own allegations in the Third Amended Complaint, the monies were paid out by the USA and there are no allegations that BMI defaulted prior to the money being paid by the USA to Heller, the monies received by Heller were never impressed with any state law equitable lien in IMIA's favor.

It is precisely because state law is unavailing that IMIA has previously advised that it is disregarding state law and claiming that its "equitable lien" arises under federal law.  It should be pointed out that IMIA's claim that federal law should provide the rule for decision is incorrect.

---

<i>(footnote continued from previous page)</i>
from the RESOLUTE in any manner and any lien or interest that IMIA may have does not attach to those funds.

14

Reliance Ins. Co., 143 F.3d at 505 (where the United States Court of Appeals for the Ninth Circuit applied state, not federal law, to a priority dispute since the "federal interest is unaffected by conflicting claims by the surety and the lender to a progress payment already made" by the government).   In any event, federal law is fully consistent with Maryland law in holding that there is no equitable lien that can be used to force a secured lender to disgorge payments received when there are no allegations or evidence that the contractor previously defaulted on a government contract.  Compare American Fidelity Co. v. National City Bank of Evansville, 266 F.2d 910, 915 (D.C. Cir. 1959) with Finance Company of America, 277 Md. at 186.  Here, the proceeds were not retained by the government, but were freely paid by the USA and then given to Heller pursuant to its perfected security interest in BMI's accounts receivable entitling Heller to retain them as the proceeds of its collateral.  See, e.g., American Fidelity, 266 F.2d at 915-16 (where progress payments made by government were paid to bank, as assignee of the contractor, the mechanics and materialmen "never had any legal or equitable rights to the proceeds of the contract and so had no right to recover the progress payments from the assignee bank").

## IV.    CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant Heller's motion to dismiss.

Respectfully submitted,

DATED:  August 29, 2003

_____/s/_____Jodie E. Buchman_____
Richard M. Kremen (Bar No. 00532)
Jodie E. Buchman (Bar No. 26004)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

Attorneys for Defendant Heller Financial, Inc.