IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| INTERNATIONAL MARINE & INDUSTRIAL APPLICATORS, INC., an Alabama Corporation, | ) ) ) ) |
| Plaintiff, | ) Case No. MJG-02CV-3542 ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, and | ) ) |
| BALTIMORE MARINE INDUSTRIES, INC., and | ) ) ) |
| HELLER FINANCIAL, INC. | ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN RESPONSE TO THE
UNITED STATES' MOTION TO DISMISS**

**I.    Introduction.**

In its Complaint, IMIA has alleged facts which give rise to a maritime lien for necessaries furnished to the RESOLUTE pursuant to the Maritime Commercial Instruments and Lien Act ("MCILA"), 46 U.S.C.A. § 31342 (2002 Supp.) based upon the *in personam* provisions of the Suits in Admiralty Act ("SAA"), 46 App. U.S.C.A. §§741-752 (2002 Supp.).  Additionally, IMIA claims an equitable lien upon, or interest in, the Change Order Proceeds, having provided the USA with notice of IMIA's entitlement prior to the USA's delivery of the proceeds to BMI.  USA was then a stakeholder in said funds because it had no remaining interest in them.  Once put on notice by IMIA that it had not been paid by BMI and that there was doubt whether BMI would pay the Change Order Proceeds over to IMIA, the USA disbursed those funds to BMI at its own risk.

The United States (sometimes referred to hereinafter as the "Government") has moved to dismiss IMIA's claim against the Government, arguing that IMIA has not stated a cognizable claim upon which relief can be granted and further that this Court lacks subject matter jurisdiction. The United States further argues that MCILA prohibits a cause of action against the RESOLUTE based upon *in personam* principles of liability as outlined in 46 App. U.S.C.A. § 741-752 (Supp. 2002). The Government relies upon citation to six district court cases from three different federal circuits to support its argument that the language of 46 U.S.C.A. § 31342(b) expressly disallows the imposition of a libel *in personam* based upon *in rem* principles of liability against a public vessel, which interpretation would have the drastic consequence of abrogating Section 741 *et seq*. of the Suits in Admiralty Act.[1] The United States' argument that MCILA abrogates Section 741 *et. seq.* of the Suits In Admiralty Act is unsupported by the legislative history surrounding the enactment of MCILA, by the case law that preceded the enactment of MCILA, or by any other case law that indicates that the enactment of MCILA abrogated 46 App. U.S.C.A. § 741 *et. seq*, of the Suits in Admiralty Act. The Fourth Circuit has yet to address the question at issue before the Court. Given that background, IMIA has sufficiently alleged an *in personam* cause of action, in lieu of a maritime lien, against the RESOLUTE based upon *in rem* principles liability. The United States' motion to dismiss IMIA's First Cause of Action should be denied.

IMIA has also alleged a cause of action against USA for an equitable lien upon, or interest in, the contract proceeds for work performed on the RESOLUTE. The case law supports IMIA's position that a subcontractor has an equitable lien or interest in the funds held by USA. USA's delivery of the funds, after notice of IMIA's claim, relinquished its stakeholder status with respect to the final payment of contract proceeds and puts the Government at risk for the payment of IMIA's share of the proceeds.

---

[1] IMIA notes that as of this writing, no Circuit Court of Appeals aside from the Eleventh Circuit has rendered an opinion on the issue now before this Court.

**II.   MCILA does not Foreclose Libel in Personam Actions Against the United States.**

IMIA's action against the RESOLUTE arises out of Section 742 of the Suits in Admiralty Act ("SAA") which states:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States....

46 App. U.S.C.A. § 742.

The United States has cited to no case in its Memorandum in Support of its Motion to Dismiss that has held that Congress intended to repeal or invalidate 46 App. U.S.C.A. § 742 when it enacted MCILA.  The SAA was intended to impose on the United States the same liability (apart from seizure or arrest under a libel *in rem*) as is imposed by the admiralty law on the private ship-owner.

The Eleventh Circuit Court of Appeals in *Bonanni Ship Supply Inc. v. United States*, 959 F.2d 1558, 1561-62 (11th Cir. 1992) directly addressed the question of whether the enactment of MCILA prohibited a suit to recovery money allegedly owed to a plaintiff subcontractor by the United States for repairs to a public vessel.[2]  The court noted that a "1989 technical amendment to the MCILA eliminated the parenthetical portion of Section (a) and added a subsection (b), which states "[t]his section does not apply to a public vessel."[3]  *Id.* at 1562.  Notwithstanding the 1989 technical amendment which added subsection (b), the *Bonanni* court correctly pointed out that the legislative

---

[2]   Although a different panel of the Eleventh Circuit in *Turecamo of Savannah, Inc. v. United States*, 36 F.3d 1083, 1087 (11th Cir. 1994), *cert. denied*, 516 U.S. 1028 (1995), questioned the wisdom of the decision in *Bonanni,* IMIA submits that *Bonanni* is still controlling precedent in the Eleventh Circuit.

[3]   The 1989 amendment to 46 U.S.C.A. § 31342 (2002 Supp.) which added subsection "(b)" can be found in the Coast Guard Authorization Act, Pub. L. No. 101-225, 103 Stat. 1908, Section 303.

history of Section 31342 states:

> "[t]his section makes no substantive changes to law. This section does not supersede the prohibition under the Public Vessels Act, the Foreign Sovereign Immunities Act, or the Suits in Admiralty Act, on bringing an *in rem* action against a public vessel."

H. Rep. No. 100-918, *reprinted at* 7 U.S.C.C.A.N., 100th Cong., 2d Sess. 6104, 6141 (1988).[4] The *Bonanni* Court looked to precedent from the former Fifth Circuit, *Illinois Central Gulf R.R. v. Southern Rock, Inc.*, 644 F.2d 1138 (5th Cir. 1981).[5]

In *Illinois Central*, the former Fifth Circuit concluded that where "Congress had stated explicitly in the legislative history that the change in wording 'may not be construed as making a substantive change in the laws replaced,' . . . the law prior to the enactment of the MCILA . . . [will] bind courts of this circuit interpreting the MCILA." *Bonanni*, 959 F.2d at 1563. Moreover, the Eleventh Circuit is not alone in considering that when the legislative history expressly states that no substantive change is made, that Congress did not intend to alter the earlier Act which it codified. See, e.g., *Muniz v. Hoffman*, 422 U.S. 454, 455 (1975) ("Absent an express provision or any indication in the Reviser's Note that a substantive change in the law was contemplated, no intention on Congress' part to change its original intention is shown by the fact that a section of an Act was repealed and replaced by a different section."); *U.S. v. Standard Oil Co.*, 384 U.S. 224, 228 (1966) ("The legislative history demonstrates without contradiction that Congress intended to codify without substantive change the earlier Acts."); *Washington-Dulles Transp., Ltd. v. Metropolitan Washington-Dulles Transp., Ltd. v. Metropolitan Washington Airports Authority,* 263 F.3d 371, 379 (4th Cir. 2001) ("[I]t will not be

---

[4] Further evidence of Congress' intent not to change the law can be found in other parts of MCILA's legislative history: "This report will detail where no substantive change to law is intended. Some have expressed concern that *changes in terminology and style* will result in changes in substance *or impair the precedent value of earlier judicial decisions* and other interpretations, even when substantive changes are not made." H. Rep. No. 100-918, reprinted at 7 U.S.S.C.A.N., 100th Cong., 2n Sess. 6104, 6108 (1988) (emphasis added).

[5] The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed. The Act that codifies the Enabling Act expressly disclaims the intent to make any substantive change in the law.") (quoting *Finley v. U.S.*, 490 U.S. 545, 554 (1989).

As demonstrated below, the language and meaning of Section 31342 remains substantially unchanged after the 1989 technical amendment which added subsection (b) to Section 31342:

46 U.S.C. § 31342 as enacted in 1988:

> [a] person providing necessaries to a vessel (except a public vessel) on the order of a person listed in section 31341 of this title or a person authorized by the owner–
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action in rem to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C.A. § 31342 (Supp. 2002) after the 1989 technical amendment:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or person authorized by the owner–
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action in rem to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.
> (b) This section does not apply to a public vessel.

The 1988 version of Section 31342 contained the language "except a public vessel" in section (a), which was removed and replaced in new subsection (b) of the 1989 amendment. A reading of *either* version of the statute indicates that an exception exists for public vessels. In other words, the Legislative History of the 1988 MCILA, as indicated above and discussed further below, unequivocally states that Congress did not intend there to be any substantive change in the law. The 1989 revision of section (a) and

the addition of subsection (b) is merely a "technical" revision and thus does not constitute a substantive change in the law. The "no substantive change in the law" language in the Legislative History of the 1988 enactment is therefore still controlling.

In addition to the fact that the Section-By-Section Analysis of the Legislative History indicates that Congress did not intend Section 31342 to make any substantive change to existing law, the following quotations from the Legislative History provide additional evidence:

> "Chapter 313 [which encompasses Section 31342] is essentially a codification of the Ship Mortgage Act, 1920 (46 App. U.S.C. 911-984)." H. Rep. No. 100-918, reprinted at 7 U.S.C.C.A.N., 100th Cong., 2d Sess. 6104, 6127 (1988).
> 
> . . .
> 
> "The Department of Justice takes no position with respect to Chapter 313, except for some minor comments. *Id.* at 6148.
> 
> . . .
> 
> "Although we [Department of Justice] defer to the Maritime Administration and the Coast Guard as to the merits of Chapter 313, we offer the following *technical* comments." *Id.* (emphasis added).

Contrary to the unambiguous Legislative History cited above, as well as a plain reading of the 1988 and 1989 versions of Section 31342, the United States cites *Sipco Services & Marine, Inc., v. Bethlehem Steel Corp.*, 892 F. Supp. 129 (D. Md. 1995) where Chief Judge Smalkin in a memorandum opinion granted the United States' motion to dismiss Sipco's maritime lien against a public vessel, relying upon the reasoning of the district court in *E. J. Bartells Co. v. Northwest Marine, Inc.*, 1994 A.M.C. 1057, 1994 WL 476189 (W.D. Wash. 1994). The *Bartells* court reasoned that "the two passages relied on in *Bonanni*, stating that no "substantive change" was intended do not refer to a *final version* of the bill, to which was added a provision at the request of the Department of Justice." *Bartells*, 1994 WL 476189 at *2 (emphasis added). The *Bartells* court then proceeded to cite a portion of a letter from the U.S. Department of Justice that requested

that Section 31342 should be amended to include the italicized phrase:

> A person providing necessaries to a vessel, *other than a public vessel of the United States or a public vessel of a foreign government,* on the order of a person listed in section 31341 of this title or a person authorized by the owner–

*Bartells*, 1994 WL 476189 at *2, quoting, H. Rep. No. 100-918, reprinted at 7 U.S.C.C.A.N., 100th Cong., 2d Sess. 6104, 6149 (1988). The problem with the *Bartells* court's reasoning is that the letter from the Department of Justice dated August 10, 1988 was included in the same legislative history that included the "no substantive change" in the law discussed, *supra*[6]. Moreover, the changes requested by the Department of Justice *are* reflected in the 1988 version of Section 31342 by the parenthetical in (a): a person providing necessaries to a vessel (**except a public vessel**) on the order of a person listed in Section 31341 of this title or a person authorized by the owner. Furthermore, the letter from the Department of Justice is not controlling, it merely suggested what it deemed to be "minor" and "technical" changes to Chapter 313. Thus contrary to the *Bartells* court's analysis, the reasoning of *Bonanni* is sound and the intent of Congress was clear that it did not foresee any substantive change in the law when it enacted MCILA.

Furthermore, the *Bonanni* court is not the only court to conclude that Congress did not intend there to be substantive change in the law with respect to MCILA Section 31342. For example, the Fifth Circuit Court of Appeals in *Racal Survey U.S.A., Inc. v. M/V COUNT FLEET*, 231 F.3d 183, 188 (5th Cir. 2000), made the following analysis with respect to the 1988 MCILA:

> In 1988, Congress superseded the prior version of the [Federal Maritime Lien Act] and enacted new provisions primarily at 46 U.S.C. §§ 31341-

---

[6] *Bartells*, 1994 WL 476189 at *2, indicates that the letter form the Department of Justice was considered *after* the language that no "substantive change in the law" was added. However, nothing in House Report No. 100-918, reprinted at 7 U.S.C.C.A.N., 100th Cong., 2d Sess. 6104 (1988), indicates that the Department of Justice request came afterwards. House Report 100-918 is dated September 15, 1988, and the Department of Justice letter is dated August 10, 1988. House Resolution No. 3105 was passed by the House on October 21, 1988, and by the Senate on October 20, 1988.

777840.1 9/15/03                                                                    7

>  31343. *See Silver Star Enters., Inc. v. SARAMACCA MV*, 82 F.3d 666, 668 n. 2 (5th Cir.1996). The *most significant change* was that Congress included a definition for "necessaries." See 46 U.S.C. § 31301(4). Section 31301(4) states that " 'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway." In the prior version of the [Federal Maritime Lien Act], "necessaries" was not defined, but its meaning could be derived from the context of § 971, which stated that a maritime lien could be received for furnishing "repairs, supplies, towage, use of dry dock or marine railway, or other necessaries." Although § 31301(4) enumerates specific kinds of "necessaries," *Congress did not intend to make any substantive change to the law*. See H.R. Rep. No. 100-918 (1988), U.S.Code Cong. & Admin.News 1988, 6104. Indeed, besides some other minor changes in language, such as replacing the term "furnishing" with the word "providing," *little changed substantively*. See, e.g., Silver Star, 82 F.3d at 668 n. 2; H.R.Rep. No. 100-918. *Accordingly, much of the case law remains persuasive, if not controlling*.

(emphasis added) (footnotes omitted). See also, *Ventura Packers, Inc. v. F/V Jeanine Kathleen,* 305 F.3d 913, 917 (9th Cir. 2002) ("The current version of the Maritime Lien Act, 46 U.S.C. §§ 31341-31342, succeed its predecessor, 46 U.S.C. §§ 971-973. Although Congress altered the text of the statute, *it intended no substantive change*.") (emphasis added); *Integral Control Systems Corp. v. Consolidated Edison Co. of New York, Inc.*, 990 F. Supp 295, 298 (S.D.N.Y. 1998) ("Accordingly the cases interpreting the statutory scheme prior to 1988 [i.e., Maritime Lien Act §§ 971-974] recodification remain instructive.")

In sum, Congress did not intend for Section 31342 of MCILA to incorporate substantive changes in the law and therefore Section 31342 is nothing more than a recodification of the Maritime Lien Act §§ 971-974. Therefore, there is nothing contained in MCILA that prohibits a party from bringing a libel *in personam* suit based upon *in rem* principles of liability for necessaries against the Government.[7]

---

[7] The United States' reliance on *Hopeman Brothers Inc. v. USNS Concord*, 892 F. Supp 129 (E.D. Va. 1995), where the court concluded that "Section 31342 could not be more unambiguous," and that the "plain language of the statute is clearly not different from the drafter's design and…therefore, a discussion of whether the Fourth Circuit permitted this type of lien before the MICLA would be overreaching" is misplaced as evidenced by the numerous cases cited *supra*, which demonstrate that Congress clearly did not intend any substantive change when it enacted Section 31342 and in light of that fact, it is an entirely reasonable construction that Section 31342 only prohibits civil *in rem* actions against public vessels, but

**III.   Section 31342 of MCILA was Only Intended to Prohibit the Arrest And Seizure of a Public Vessel.**

When Congress enacted MCILA in 1988 and 1989 it intended to merely recodify existing law with no substantive changes and to reinforce the premise that a party could not arrest and seize a public vessel. The United States essentially argues that Congress must have intended the wholesale repeal of the Suits in Admiralty Act, which provides a party the right to proceed against the Government *in personam* where if such vessel were privately owned or operated, a proceeding in admiralty could be maintained.

An analysis of either the 1998 or 1989 versions of MCILA yield the same result– Congress never intended to wholly abrogate the SAA. The 1988 and 1989 versions of MCILA are substantially the same, in that they both include language that prohibits a civil in rem action for a maritime lien against a public vessel. However, as indicated in *Bonanni*, "[a] reading of the MCILA that does not preclude the imposition of a maritime lien against a public vessel, and only prohibits the arrest and seizure of the vessel as a means of effecting a recovery against the Government, is both plausible and fully consistent with Stevens[8] and Marine Coatings.[9]" *Bonanni*, 959 F.2d at 1563. MCILA also makes no mention of *in personam* actions and only prohibits *in rem* actions against public vessels.

Section 31342's prohibition of *in rem* actions against public vessels is in accord with Congress' intent to prevent the arrest and seizure of government owned vessels as explained in *The Lake Monroe*, 250 U.S. 246, 248 (1919). While disallowing an *in rem* seizure of a public vessel, Congress has expressly allowed an aggrieved party to file libel

---

allows libel actions *in personam* based upon *in rem* principles of liability based on the Suits in Admiralty Act.
[8]   *Stevens Technical Services, Inc. v. United States*, 913 F.2d 1521 (11th Cir. 1990).
[9]   *Marine Coatings of Alabama v. United States*, 71 F.3d 1558 (11th Cir. 1996).

*in personam* based upon *in rem* principles for damages against the government:

> Congress, in 1920, adopted the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. s 741 et seq., which provided generally that a 'libel in personam' for damages could be filed against the government in any case where if the government merchant vessel were privately owned or operated a 'proceeding in admiralty' could be maintained, Section 2 [46 U.S.C. § 742]; but that vessels subject to suit under the Act should not be subject to seizure or arrest, Section 1[46 U.S.C. § 741].  Although [46 U.S.C. § 742] of the Act limited suit to the filing of 'a libel in personam,' this Court interpreted the provisions of [46 U.S.C. § 743] of the Act to *authorize recovery in such suit on admiralty principles of in rem as well as in personam liability.*  Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472.

*Canadian Aviator v. United States*, 324 U.S. 215, 219-220 (1945) (emphasis added) (footnotes omitted).  The Court reiterated its holding in *Canadian Aviator* in *Weyerhaeuser Steamship Co. v. United States*, 372 U.S. 597, (1963) where in a proceeding in libel against the United States for damage sustained in a collision, the court noted, "[a]s this Court has pointed out, the Public Vessels Act[10] was intended to impose on the United States the same liability (apart from seizure or arrest under a libel in rem) as is imposed by the admiralty law on the private shipowner [i.e., the Suits in Admiralty Act]."  372 U.S. at 600.  While *Canadian Aviator* involved a tort as opposed to an action for necessaries, the critical focus in *Canadian Aviator* is the statement : "the Public Vessels Act was intended to impose on the United States the same liability (apart from seizure or arrest under a libel in rem) as is imposed by the admiralty law on the private shipowner."  324 U.S. at 228.  See e.g., *Thomason v. U.S.*, 184 F.2d 105, 107 (9th Cir. 1950); *U.S. v. The Australia Star*, 172 F.2d 472, 477 (2nd Cir. 1949); *O.F. Nelson & Co. v. U.S.*, 149 F.2d 692, 699 (9th Cir. 1945).  In other words, rather than constricting the scope of the SAA or Public Vessels Act, the Court in *Canadian Aviator* solidified the expansive breadth of the SAA and Public Vessels Act.

---

[10] The Public Vessels Act provides that suits thereunder shall be subject to and proceed in accordance with all consistent provisions of the Suits in Admiralty Act.  46 U.S.C.A. § 782.

Moreover, the very purpose of 46 App. U.S.C.A. § 743 (Supp. 2002) of the Suits in Admiralty Act is to permit not only a recovery *in rem*, but one *in personam* as well, when the claim is within the framework of the statute. Section 743 reads in part:

> If the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libelant in any proper case from seeking relief in personam in the same suit. . . .

46 App. U.S.C.A. § 743. The recovery sought against the United States is not ex contractu, but on a statutory right granted as quid pro quo for preventing the creditor from arrest and seizure of the vessel.

In *Stevens Technical*, a subcontractor provided necessaries to a Military Sealift Command vessel, the Sealift Antarctic, a public vessel, at the request of the authorized representatives of the vessel. 913 F.2d at 1525-26. When the plaintiff was not paid for the necessaries provided, it filed suit *in personam* against the prime contractor and *in rem* against the United States. *Id.* at 1526. The plaintiff appealed the ruling of the district court that it could recover nothing on its *in rem* libel against the United States by virtue of the Public Vessels Act, 46 U.S.C. § 788. *Id.* The *Stevens Technical* panel explained at length the history and genesis of the Public Vessels Act, thus arriving at the question posed almost verbatim by the Supreme Court in *Canadian Aviator,* 324 U.S. at 218: "Does § 788 [of the Public Vessels Act] in the light of the SIA [Suits in Admiralty Act] and PVA [Public Vessels Act] prevent the assertion of a maritime lien for repairs to a public vessel in a PVA suit in personam with election for in rem liability?" *Stevens Technical,* 913 F.2d at 1527. Relying upon *Canadian Aviator,* the *Stevens Technical* court concluded that "for nearly half a century the Public Vessels Act authorized a libel (complaint) in personam against the government to be determined on principles of both in personam and in rem liability under the maritime law." *Stevens Technical*, 913 F.2d at

1524.

As a result of the *Stevens Technical* holding, the *Bonanni* court concluded that, at the time of the 1989 amendments to the MCILA, and at the time when the legislative history stated that the amendments caused no substantive change in the law, the law allowed a subcontractor who fell within the statutory definition of a supplier of necessaries to a public vessel to assert a maritime lien against the United States.[11] *Bonanni*, 959 F.2d at 1563.  When Congress passed MCILA, it surely was aware that the SAA prohibited only the *in rem* seizure of a public vessel, but did not prohibit an *in personam* action based upon principles of *in rem*.  Because IMIA is entitled to bring an *in personam* action against USA **based upon *in rem* principles** it likewise has a claim for a maritime lien since "under the American law of admiralty, the existence of a maritime lien is synonymous with the availability of a libel in rem." *Bunn v. Global Marine, Inc.*, 428 F.2d 40, 48 n. 10 (citing, *The Rock Island Bridge*, 73 U.S. (6 Wall.) 213, 215 (1867); Gilmore & Black, *The Law of Admiralty* § 9-19, at 510 (1957)).

When Congress passed MCILA, it simply recodified the longstanding principle that you cannot seize and sell a public vessel.  In other words, MCILA does not exclude an *in personam* action against a public vessel based upon *in rem* principles.  To read MCILA any other way would render the provisions of the SAA nugatory.

The United States cites *Colle Towing, Inc*. v. *United States*, No. 95-1263, 1996 WL 175007 (E.D. La. April 15, 1996) as being in accord with *Sipco,* discussed *supra*. The *Colle* court however, summarily dismissed the plaintiff subcontractor's claim for a maritime lien pursuant to Section 31342 because the plaintiff conceded in its opposition memorandum that it could not proceed *in rem* against Barge No. 834. *Colle Towing*, 1996 WL 175007 at *2.  Furthermore, the *Colle* court made no reference to any Eleventh

---

[11] The Eleventh Circuit in *Marine Coatings of Alabama v. United States*, 932 F.2d 1370 (11th Cir. 1991), also acknowledges the availability of *in personam* actions against the United States on *in rem* principles of liability.

Circuit case law with respect to its holding regarding Section 31342. Thus *Colle Towing* is inapposite as to whether the SAA and MCILA preclude IMIA from recovering IMIA's Change Order Proceeds. Based upon the allegations contained in IMIA's Third Amended Complaint and the foregoing analysis, the Government's motion to dismiss IMIA's claims under the SAA and MCILA must be denied.

### IV.   IMIA HAS SUFFICIENTLY ALLEGED AN EQUITABLE INTEREST OR LIEN.

#### A.   SAA Waives Sovereign Immunity to Allow Stakeholder Claim.

The Government argues that IMIA can have no equitable lien or interest upon IMIA's Change Order Proceeds that the Government paid to BMI, notwithstanding the Government's stakeholder status, because there has been no waiver by Congress of the Government's sovereign immunity. (USA's Mem. in Supp., at p. 6.) As support for its argument, the USA cites *Department of the Army v. Blue Fox*, 525 U.S. 255, 265 (1999), and cases cited therein, for the proposition that subcontractors cannot enforce an equitable lien against government funds without an express waiver of sovereign immunity. Additionally, the USA argues that the SAA does not address claims for equitable liens on government funds.

While a waiver of sovereign immunity must be "unequivocally expressed" in the text of the statute, *Blue Fox,* 55 U.S. at 261, nothing in *Blue Fox* says that a waiver of sovereign immunity must expressly state that it covers claims for equitable relief. Moreover, the Supreme Court in *Blue Fox* was asked to decide whether the language "seeking relief other than money damages" in 5 U. S. C. § 702 of the Administrative Procedures Act ("APA") encompassed a claim for an equitable lien. The court held the equitable lien in *Blue Fox* to be a substitute for compensatory relief, as opposed to specific equitable relief. The instant case, however, is materially different from *Blue Fox* because IMIA's claim for an equitable lien arises from the wrongful payment by USA as a stakeholder – USA had a legal duty not to simply pay BMI once it received notice from

IMIA regarding BMI's nonpayment and doubt as to future payment.  Once IMIA put USA on notice, an equitable lien was created and an equitable interest arose in the remaining earmarked contract funds in favor of IMIA.

Furthermore, courts sitting in admiralty are not strangers to the application of equitable principles.  *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962) ("Equity is no stranger in admiralty; admiralty courts are indeed, authorized to grant equitable relief."); *U.S. v. Cornell Steamboat Co.*, 202 U.S. 184, 195 (1906) ("courts of admiralty may apply equitable principles to subjects within their jurisdiction, and, in, the distribution of proceeds in their possession or under their control, may give effect to their equitable claims.").

In fact, sovereign immunity has been waived pursuant to the Suits in Admiralty Act, which provides that the United States may be sued in cases where, "if a private person . . .were involved, a proceeding in admiralty could be maintained. . . ."  46 App. U.S.C. § 742.  The SAA provides a broad waiver of the Government's sovereign immunity for all maritime claims.  *See e.g., Johnson v. U.S. Shipping Board Emergency Fleet Corp.,* 280 U.S. 320, 326 (1930) (SAA provides remedy in admiralty for adjudicating and satisfying all claims arising out of the possession and operation of public vessels by the United States); *Arkansas State Highway Comm'n v. Arkansas River Co.*, 271 F.3d 753, 757 (8th Cir. 2001) (SAA waives "sovereign immunity for all maritime claims arising out of the United States' ownership or operation of a vessel.")

In *Commercial Trust Co. v. United States Shipping Board Emergency Fleet Corp.*, 48 F.2d 113 (2nd Cir. 1931), Judge Learned Hand addressed the issue of whether federal district courts had jurisdiction over the collection of a loan made by the plaintiff to the assignor, United States Transport Company, which transferred bills of lading to the plaintiff.  *Id.* at 114.  The defendant repossessed itself of the vessels, and collected the freights from the consignees.  *Id.*  Thus, the plaintiff brought suit against the defendant to recover monies from the defendant for the freights.  *Id.*  The court held that "where the

loan is itself maritime, the admiralty will entertain a suit to trace a security into the hands of one with whom the pledgor has wrongfully mixed the proceeds with his own." *Id.* Moreover, the court found the Suits in Admiralty Act to be the exclusive remedy against the United States. *Id.* (citing *Johnson v. U.S. Shipping Board Emergency Fleet Corp.*, 280 U.S. 320 (1930). *See also Manuel v. U.S.*, 50 F.3d 1253, 1259-60 (4th Cir. 1995). Because the SAA provides the exclusive remedy against the government in all matters maritime, and like the plaintiff in *Commercial Trust Co.* who sought in equity to recover the proceeds of the freight from the United States, so may IMIA proceeds against the government under the SAA on a claim for an equitable lien or interest upon the proceeds held by USA.

Moreover, the Suits in Admiralty Act does not describe all possible maritime claims, and the fact that the SAA does not state on its face any reference to equitable liens, by the same token, does not foreclose the assertion of an equitable lien against the Government with respect to repairs performed on a public vessel.

> **B.     IMIA's Third Amended Complaint States a Cause of Action for Equitable Lien or Interest Based upon The Government Stakeholder Status.**

The USA, as a holder of a sum of money in which it had no further interest, became a stakeholder with respect to said monies and was not free to pay said monies that included IMIA's Change Order Proceeds over to BMI once it was put on notice by IMIA that it had not been paid by BMI and likely would not be paid by BMI. *See Balboa Insurance Co., v. U.S.*, 775 F.2d 1158, 1162 (Fed. Cir. 1985) (Government becomes a stakeholder with a duty to act with reasoned discretion after it receives notice of competing interests in the contract funds); *Great American Ins. Co., v. U.S.*, 492 F.2d 821, 825 (Ct. Cl. 1974) (Government liable for improperly abandoning its role as stakeholder when it makes progress payment to contractor after receiving notice from surety that it had interest in the retained funds.); *Fireman's Fund Insurance Co. v. United*

*States*, 421 F.2d 706, 708 (Ct. Cl. 1970) (Surety has equitable interest in final settlement payment by government to contractor where contracting officer is on notice that subcontractor has not been paid); *Home Indemnity Co. v. United States*, 376 F.2d 890, 893-894 (Ct. Cl. 1967) (Government as stakeholder of final payment will be liable to surety where government without explanation makes final contract payment to contractor after receiving notice that surety claims interest in funds); *Newark Insurance Co. v. United States*, 169 F. Supp. 955, 956 (Ct. Cl. 1959) (Government in position of stakeholder liable for making final payment to assignee of contractor where government receives due notice of competing claims to final payment funds.)

In *Active Fire Sprinkler Corp. v. United States Postal Service*, 811 F.2d 747 (2nd Cir. 1987), the plaintiff-subcontractor brought an equitable lien claim in state court against the United States Postal Service ("USPS") because it had not been paid by the general contractor ("contractor"). *Id.* at 749. The subcontractor sought to recover $256,850.48 owed to it by the contractor by requiring USPS to pay over to it any money owed by USPS to the contractor. *Id.* at 750. At the time the subcontractor commenced suit for the lien, USPS had over $900,000 earmarked to be paid to contractor under the contract. *Id.* After the subcontractor commenced suit against USPS, USPS made several payments from the earmarked funds to the surety and creditors of contractor. *Id.* The subcontractor argued that as an unpaid subcontractor on federal construction project, it had equitable lien against any money held by USPS for the account of contractor. *Id.* Additionally, the subcontractor argued that USPS breached its duty as stakeholder by making payments to contractor's creditors and to sureties after subcontractor placed USPS on notice of subcontractor's claim. *Id.*

The Second Circuit found that the Postal Reorganization Act ("PRA") provides a broad waiver of immunity and that the Miller Act does not narrow the waiver contained in the PRA, nor does it replace or eliminate other remedies available to construction subcontractors. *Id.* at 752, 754. The court found that the subcontractor held an equitable

interest in the unpaid contract fund that superceded the surety's interest. *Id.* at 754. With regard to USPS's stakeholder status, the court stated:

> [W]e cannot accept USPS's position that its payment to the Sureties frees it from liability to [the subcontractor.] To do so would allow USPS, as a holder of a sum of money for which two or more parties contend, to effectively decide the issue by selecting the one to whom the money is to be paid. Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims by the mere physical act of delivering the state to one of them.

*Id.* at 757 (citing, *Newark Insurance*, 169 F. Supp. at 957; *Balboa Insurance Co.*, 775 F.2d at 1163-63.) Once USPS became aware of the subcontractor's claim, it was put on notice of the possibility of a recovery against it. *Active Fire Sprinkler*, 811 F.2d at 757. Furthermore, USPS "should have recognized the risk that it faced if it paid money out to other parties" and "cannot now complain that [the subcontractor] did not try and prevent it from taking that risk." *Id.* The subcontractor's equitable interest in the fund superceded the interests of those who received the disbursed funds. *Id.* at 756. See also, *Kennedy Electric Co., Inc., v. United State Postal Service*, 508 F.2d 954 (10th Cir. 1974) (where Post Office neglected to require Miller Act bonds and general contractor was unable to pay, subcontractor entitled to equitable lien on contract proceeds in hands of Post Office.)

In *Fireman's Fund Ins. Co., v. U.S.*, 909 F.2d 495, 498 (Fed. Cir. 1990), the court restated the well-established principle that the government owes no equitable duty to a surety unless the surety notifies the government that the principal has defaulted under the bond. *Id.* (citing cases.) The equitable duty however, arises once notice is provided to the government. *Id.* IMIA has alleged in its Complaint that it put USA on notice that BMI had yet to pay IMIA and that if USA paid BMI the final payment that included IMIA's Change Order Proceeds, IMIA would not likely get paid. Thus, following the legal principles espoused in *Fireman's Fund*, *Kennedy Electric* and *Active Fire,* an

equitable lien or interest in favor of IMIA arose in the undisbursed contract funds in the hands of USA once IMIA put USA on notice of BMI's non-payment and likelihood of future non-payment.

As in *Active Fire* and the other cases cited *supra*, IMIA has alleged a cause of action against USA for an equitable lien upon, or interest in, the unpaid contract proceeds that were subsequently paid by USA to BMI.  Contrary to USA's assertion, *United States v. Munsey Trust Co.*, 332 U.S. 234, 241 (1947), does not foreclose a subcontractor from enforcing an equitable lien against the Government. (USA's Mem. in Supp., at p. 6.) The Supreme Court in *Munsey Trust* expressly stated that it was not deciding whether laborers and materialmen, left unpaid by both the general contractor and the surety, had no rights to contract retainage funds: "We need not decide whether laborers and materialmen would have any claim to the retained percentages, if both contractor and surety failed to pay them." *Munsey Trust*, 332 U.S. at 242. *See also Matter of Rah Development Company, Inc.*, 184 B.R. 525, 537 (W.D. Mich. 1995) where the Bankruptcy Court concluded after an in-depth analysis of public construction cases that a subcontractors possess an "equitable interest in, akin to an equitable lien on, contract proceeds.

Once USA became a stakeholder, it had an equitable obligation to see that IMIA received payment which it failed to do.  As in *Pearlman*, the Government in the instant case is a stakeholder.  Someone other than USA is entitled to receive the funds on the project.  USA's sole interest as stakeholder is to insure that laborers and materialmen such as IMIA have been paid.  Once IMIA put USA on notice that it had not been paid by IMIA, USA had an obligation to pay IMIA out of the retained fund.  *Pearlman*, 371 U.S. at 141.

Additionally, the cases cited *supra*, similarly hold that IMIA has an equitable lien upon or interest in the proceeds as a result of USA's breach of its stakeholder status. IMIA put USA on notice, prior to USA's disbursement of the final contract proceeds to

BMI, that IMIA had not been paid by BMI and was unlikely that BMI would receive payment if USA paid all of the final payment to BMI. (Third Amended Complaint, ¶¶ 45-54 and Exhibits attached to Plaintiff's Complaint.) Thus, once IMIA put USA on notice of BMI's nonpayment, and the strong likelihood of future nonpayment, an equitable duty was placed upon the USA to exercise reasonable discretion in the disbursement of the final contract funds.

The Court of Appeals for the Federal Circuit in *Balboa*, 775 F.2d at 1165, held that where the Government is a stakeholder, the Government must show that its payment to the contractor rather than the surety was a reasonable exercise of the discretion conferred on the contracting agency by the terms of the contract and the applicable law and regulations. *See also Integon Indemnity Corp., v. United States*, 12 Cl. Ct. 115 (Cl. Ct. 1987) (summary judgment inappropriate where factual issues remained as to whether government used reasonable discretion in paying contractor instead of surety). Additionally, the *Balboa* court devised eight factors to be determine whether the Government has exercised reasonable discretion in distributing the funds. Whether or not the Government has exercised reasonable discretion in distributing the contract funds to BMI, after it was placed on notice by IMIA that it had not been paid and that IMIA looked to the Government for payment, is a question of fact. Any analysis of the eight factors devised by the *Balboa* court to judge reasonableness would also entail questions of fact. Addressing those issues by Motion to Dismiss is premature. IMIA has sufficiently alleged a cause of action against USA for breach of its stakeholder duties. Thus, USA's motion to dismiss IMIA's Seventh Cause of Action must be denied.

### III.     Conclusion.

The law is clear that MCILA does not abrogate the statutory rights conferred under the Suits in Admiralty Act which allow a party to assert a libel *in personam* based upon *in rem* principles of liability against the United States. The Government has offered no evidence that Congress ever intended for MCILA to trump the rights afforded

pursuant to 46 App. U.S.C.A. § 741 *et. seq*. Further, the case law cited *supra*, supports the fact that Congress never intended for MCILA to substantively change the law. Additionally, IMIA has alleged an equitable lien upon the undisbursed contract proceeds in the hands of USA, and, an equitable remedy against USA for breach of its stakeholder duty. The United States has failed to meet its burden of showing that IMIA has not alleged a claim upon which relief can be granted. The Government's Motion to Dismiss must be denied.

                                          _____/s/_____
Edward J. Baines, Federal Bar No. 06776
Patrick E. Clark, Federal Bar No. 26628
Saul Ewing LLP
100 South Charles St., 16th Floor
Baltimore, Maryland 21201-2773
(410) 332-8600
(410) 332-8185 (fax)

Attorneys for Plaintiff

OF COUNSEL:
I. David Cherniak, Federal Bar No. CHERI8107
Lawrence J. Seiter, Federal Bar No. SEITL4720
Johnstone, Adams, Bailey, Gordon and Harris, LLC
P. O. Box 1988
Mobile, Alabama 36633
Tel.: (251/432-7682)
Fax: (251/432-0712)