IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| INTERNATIONAL MARINE & <br> INDUSTRIAL APPLICATORS, INC., <br> an Alabama Corporation, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, and <br><br> BALTIMORE MARINE <br> INDUSTRIES, INC., and <br><br> HELLER FINANCIAL, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. MJG-02CV-3542 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO
UNITED STATES' MOTION TO DISMISS**

The single issue addressed by the United States' motion is both simple and dispositive of Plaintiff's claim. Plaintiff claims that they possess a maritime lien for ship repair work (i.e., "necessaries") performed as a subcontractor on a "public vessel" of the United States based on the Maritime Commercial Instruments and Lien Act ("MCILA"), 46 U.S.C. § 31342 (2002 Supp.), pursuant to the in personam provisions of the Suits in Admiralty Act ("SAA"). 46 U.S.C. app. §§ 741-52.

**I.    Plaintiff Has No Cause of Action under the SAA.**

Contrary to Plaintiff's argument, the SAA is a jurisdictional statute which does not grant an independent cause of action. Additionally, as stated in the United States' Motion to Dismiss,

Congress has expressly foreclosed the Plaintiff's claim. The MCILA unambiguously excludes public vessels from its ambit. The plain meaning of the MCILA's "public vessels exception" to the maritime lien for necessaries is fatal to Plaintiff's claim.

Likewise, Plaintiff has not addressed the SAA's limited waiver of sovereign immunity. As previously stated, the SAA does not provide a cause of action against the United States, but merely operate to waive the sovereign immunity of the Government in admiralty suits. The SAA also preserves to the United States "the benefits of all exemptions and of all limitations of liability accorded by law to the owners . . . of vessels." 46 U.S.C. app. § 746. One of those entitled defenses includes the exclusion of public vessels from the MCILA. Thus, the Plaintiff has not stated a separate source of liability against the United States that is recognized in admiralty law.

> II.   **The Substantive Maritime Law: the MCILA Expressly Excludes Public Vessels**.

"In rem maritime actions are available `only in connection with a maritime lien.'" All Pacific Trading, Inc. v. M/V HANJIN YOSU, 7 F.3d 1427, 1431 (9th Cir. 1993), quoting Hurley v. Ace Maritime Corp., 927 F.2d 493, 496 (9th Cir. 1991). Hence, if a Plaintiff (or, in the maritime terminology, a libelant) has a maritime lien on a vessel or other property, such lien is enforceable by an action in rem. As detailed in the government's brief supporting its Motion to Dismiss, the MCILA specifically excludes maritime liens for necessaries against public vessels. The applicable provision of the Act states:

> (a) **Except as provided in subsection b of this section**, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner --

    (1) has a maritime lien on the vessel;
    (2) may bring a civil action in rem to enforce the lien; and
    (3) is not required to allege or prove in the action that credit was given to the vessel.
  **(b)**  **This section does not apply to a public vessel.**

46 U.S.C. § 31342 [emphasis added].

  It should be noted that by its language, the MCILA, in subsection (a) of 46 U.S.C. § 31342, both (1) recognizes the existence of a lien for necessaries **and** (2) provides the remedy, a civil action <u>in</u> <u>rem</u>. The provision exempting public vessels in subsection (b) applies to the **entire section**, including all parts of subsection (a). The statute therefore not only prohibits an <u>in</u> <u>rem</u> action against a public vessel, but also exempts public vessels from the provision defining when a person has a maritime lien in the first instance. In other words, the "public vessels exception" applies to the entire cause of action, including both the right **and** the remedy.

  As stated, the SAA does not supply the missing cause of action because the SAA merely defines the scope of the Government's waiver of sovereign immunity. <u>See</u> <u>Williams</u>, <u>supra</u>, 874 F.2d at 1059-60; <u>Blanco</u>, <u>supra</u>, 775 F.2d at 63 n.8. A Plaintiff must look to a separate source of liability, such as contract, tort, or statute, to recover. None exists here.

  Thus, while the waiver of sovereign immunity applies to any claim in which a private shipowner would be liable in admiralty, the available causes of action against the United States are narrower, because in the case of "necessaries" provided to a public vessel, Congress has expressly eliminated the maritime lien as a cause of action.

In this case, the Court's inquiry should be at an end, along with the Plaintiff's action against the United States. However, in reply to Plaintiff's Opposition, an examination of the legislative history leads to the same result.

The MCILA replaced the earlier Maritime Lien Act, 46 U.S.C. §§ 971 et seq., which contained no explicit exception for maritime liens on public vessels. The Maritime Lien Act was repealed, effective January 1, 1989. Pub. L. 100-710, Title 1, Section 106(b)(2), 102 Stat. 4752 (1988) (Set out as a note preceding 46 U.S.C. § 2101.) By the same law, the MCILA was enacted, to take effect on the same date. Id. § 107(e). (Set out as a note following 46 U.S.C. § 30101.)

As originally enacted, the MCILA contained slightly different language at Section 31342, but had the same effect with regard to public vessels:

> (a)   A person providing necessaries to a vessel (**except a public vessel**) on the order of a person listed in section 31341 of this title or a person authorized by the owner -
> (1)   has a maritime lien on the vessel;
> (2)   may bring a civil action in rem to enforce the lien; and
> (3)   is not required to allege or prove in the action that credit was given to the vessel.

Pub. L. 100-710, Title I, Section 102(c), 102 Stat. 4748 (1988) (emphasis added).

A technical amendment to Section 31342, made effective on December 12, 1989, by Sections 303(6) and 309 of the Coast Guard Authorization Act of 1989, Pub. L. 101-225, 103 Stat. 1924, 1926, made the statute read as it does in its present form. The technical amendment shifted the exception for public vessels from a parenthetical expression in subsection (a), to the present, more explicit, separate subparagraph (b). Lest there be any doubt about Congress' intent,

4

the analysis of the amendment by the Committee on Merchant Marine and Fisheries states unequivocally:

> Section 31342 has been rewritten by deleting the parenthetical provisions relating to excluding public vessels from the application of the existing law and replacing it with a new subsection (b) to ensure clarity. **This is not a substantive change but simply makes more explicit the long established rule of law prohibiting maritime liens against public vessels. It further clarifies the existing law that a claim may not be brought either in personam or in rem on a maritime lien theory against a public vessel**. This section does not affect a cause of action against the United States based on a valid maritime contract.

135 Cong. Record - House 9308, 9312 (November 21, 1989) (emphasis added). If one could not garner the intent of Congress from the plain, unequivocal language of the statute, then the highlighted section of the legislative history completely removed all obstacles to understanding.

As support for its argument, the Plaintiff substantially relies upon the holding in Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558 (11th Cir. 1992). The Bonanni court determined that the Eleventh Circuit's prior holdings in Stevens Technical Services, Inc. v. United States, 913 F.2d 1521 (11th Cir. 1990), and Marine Coatings of Alabama, Inc. v. United States, 932 F.2d 1370 (11th Cir. 1991) were in conflict with the language of MCILA section 31342 -- which is the very section that prohibits a maritime lien for necessaries against a public vessel.[1]

In what can only be described as a remarkable caveat, the Bonanni panel overtly expressed its misgivings as to the correctness of the Eleventh Circuit's two pre-MCILA cases:

> Given the clear desire of Congress to exempt public vessels from coverage under the maritime lien provisions of the MCILA, however, reconsideration of the rule

---

[1] Neither Stevens nor Marine Coatings were decided under the MCILA, which applies to this case and binds this Court.

5

announced in Stevens Technical and Marine Coatings by this court en banc may be in order.

Bonanni, id., 959 F.2d at 1564, n.11.  The Bonanni court nevertheless felt bound by the Eleventh Circuit's own prior decisions, a decision made easier for the Court as it ultimately ruled in favor of the Government on the separate basis that no maritime lien existed under the facts of the case.

We also point out that the Eleventh Circuit's initial error can be traced to its decision in Stevens Technical Services, which relied upon a misreading and/or overreading of Canadian Aviator, Ltd. v. United States, 324 U.S. 215 (1945).  In 1945, the Supreme Court held that the Public Vessels Act (PVA), like the SAA, was intended to impose the same liability on the United States -- apart from seizure or arrest of a public vessel -- as is imposed by the admiralty law on a private shipowner.  Canadian Aviator, Ltd., id., 324 U.S. at 226-28 (1945).  Under this rationale, an in personam action under the PVA could proceed on principles of in rem liability **if** an in rem action could have been brought against a private vessel owner.  Id. at 226-27.

But, the breakdown in the Eleventh Circuit's reliance on Canadian Aviator in this context is that the latter case involved a **tort** claim -- it did **not** involve a claim for "necessaries."  In fact, the specific issue in that case was whether the PVA authorized a suit for negligent operation of a government patrol boat, even though the boat and the damaged vessel never touched.  Finding that, under general admiralty law, tort liability does not require physical contact, id. at 228, n. 31, the Court held that the same rule applied to the United States under the PVA.  A review of Canadian Aviator reveals the following narrow holding:

> The consent to suit in the [PVA] thus extends to cases where the **negligence** of the personnel of a public vessel in the operation of the vessel causes damage to other ships, their cargos, and personnel, regardless of physical contact between the two ships, **and where principles of admiralty law impose liability on private parties**.

6

Canadian Aviator, Ltd., id., 324 U.S. at 224-25 (emphasis added).  Thus, in Canadian Aviator the PVA provided the jurisdictional hook, while general maritime law (maritime tort law) provided the cause of action.

The MCILA specifies that "damages arising out of maritime tort" (among other types of claims) constitute a "preferred maritime lien," 46 U.S.C. § 31301(5)(B).  Neither the quoted section nor any other portion of the MCILA in any way distinguishes "maritime torts" caused by "private vessels" from maritime torts caused by "public vessels."  By contrast, the **only** type of lien under the MCILA which differentiates between "private vessels" (i.e., provides a lien) and "public vessels" (i.e., precludes a lien) is the maritime lien for "necessaries."  46 U.S.C. § 31342(b), quoted supra.  As opposed to the substantive maritime law tort claim in Canadian Aviator, there is no maritime law claim under the MCILA for "necessaries" as against a public vessel which can be hung on the SAA's jurisdictional hook.

This Court obviously is not bound by the Eleventh Circuit, particularly when a panel of that court expressed such uneasiness with its own circuit decision as to recognize that they violate the "clear desire of Congress" and to invite en banc review.  Rather, this Court should rely on its prior rejection of Plaintiff's theory in Sipco Services & Marine, Inc. v. Bethlehem Steel Corp., 892 F. Supp. 129 (D. Md. 1995), as discussed in the government's Motion to Dismiss.

### III. The Government Is Not a "Stakeholder" Obligated to Oversee the Contractual Obligations of Prime Contractors with Their Subcontractors.

In the alternative, Plaintiff relies on bondholder/surety cases to support its contention that the United States owes an obligation to ensure BMI pays its subcontractors.  Plaintiff prominently relies on Balboa Insurance Co., v. United States, 775 F.2d 1158 (Fed. Cir. 1985) for

7

this proposition. In <u>Balboa</u>, plaintiff was surety on Miller Act[2] bonds, often referred to as payment and performance bonds. The <u>Balboa</u> Court explanation of the difference between a surety and normal subcontractor.

> A suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee, see <u>United Electric Corp. v. United States</u>, 227 Ct. Cl. 236, [citation omitted] <u>cert</u>. <u>denied</u>, [citation omitted]. Both the obligor-principal (the prime contractor) and the surety are liable to the obligee (here, the Government), and no suretyship exists in the absence of any of the three parties. In contrast to a subcontractor, which has no obligations running directly to or from the Government, <u>United States v. Munsey Trust Co.</u>, 332 U.S. 234, 241 [citation omitted] (1947) (and therefore possess no enforceable rights against the United States), a surety, as bondholder, is as much a party to the Government contract as the contractor.

<u>Id.</u> at 1160.

The Court noted that if the surety fails to perform, the government can sue it or the bonds. <u>Id.</u> at 1160. Against that background, the Court held that the U.S. became a stakeholder with a duty of acting with reasoned discretion when a Miller Act surety alleges that the contractor has breached the contract by defaulting under one of the bonds. <u>Id.</u> at 1162. But this case is inapplicable here, because there is no surety agreement in force.

Likewise, Plaintiff's reliance on <u>Active Fire Sprinkler Corp. v. United States Postal Service</u>, 811 F.2d 747 (2nd Cir. 1987) and <u>Kennedy Electric Co. v United States Postal Service</u>, 508 F.2d 954 (10th Cir. 1974) is also misplaced. Unlike the case at bar, <u>Active</u> and <u>Kennedy</u> are Miller Act cases against the Postal Service, involving, again, the relationship among bond sureties and the effect of the Postal Reorganization Act. Likewise, <u>Fireman's Fund Insurance Co.</u>

---

[2] The Miller Act, 40 U.S.C. § 270a - 270f, provides protection to subcontractors, laborers and material suppliers on government building projects by requiring the general contractor to post a payment bond.

v United States, 421 F.2d 706 (Ct. Cl. 1970) similarly involves a bondholder/surety interests, and is also inapplicable to IMIA's claim.

The case at bar does not involve a bondholder or surety relationship as described in Balboa and the other cases cited by Plaintiff. The Supreme Court stated the established and controlling rule; "unless waived by Congress, sovereign immunity bars subcontractors and other creditors from enforcing liens on Government property or funds to recoup their losses." Department of the Army v. Blue Fox, 525 U.S. 255, 265 (1999). In fact there is no law to support Plaintiff's legal theories and neither the SAA nor the MCILA waive sovereign immunity for the purposes of allowing a subcontractor with no privity of contract with the government, to gain an equitable lien on government funds paid to its prime contractor.

Accepting Plaintiff's argument would require the United States to act as contract administrator for all contracts; responsible for ensuring that all subs were paid and liable to the subs if monies disbursed to the prime were used for other purposes. This is not and cannot be the law.

## CONCLUSION

For the reasons stated above, the United States' Motion to Dismiss should be granted.

Dated: September 26, 2003.

                                        Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        THOMAS M. DIBIAGIO
                                        United States Attorney

THOMAS F. CORCORAN
Assistant U.S. Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, MD 21201-2692
Tel: 410-209-4800
Fax: 410-962-2310


_____/s/_____
GREGG A. CERVI, Trial Attorney
PETER F. FROST, Senior Admiralty Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC  20044-4271
Telephone: (202) 616-4033 (Cervi)
               (202) 616-4031 (Frost)
Facsimile:  (202) 616-4159

Case 1:02-cv-03542-MJG   Document 55   Filed 09/26/2003   Page 10 of 11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Memorandum in Support of the United States' Motion to Dismiss was delivered via U.S. Mail postage pre-paid, this 26th day of September, 2003, addressed to the following counsel of record:

Edward J. Baines
Patrick E. Clark
Saul Ewing
100 South Charles St., 16th Floor
Baltimore, Maryland 21201-2773
Tel: 410-332-8600
Fax: 410-332-8185

Michael Schatzow
Tracey Cohen Paliath
Venable Baetjer and Howard LLP
Two Hopkins Plaza, Suite 1800
Baltimore Maryland 21201
Tel: (410) 244-7400
Fax: (410) 244-7742

I. David Cherniak
Lawrence J. Seiter
Johnstone, Adams, Bailey, Gordon
   and Harris, LLC
P.O. Box 1988
Mobile, Alabama 36633
Tel: 251-432-7682
Fax: 251-432-0712

Richard M. Kremen
Jodie Elizabeth Buchman
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Tel: (410) 580-3000
Fax: (410) 580-3001

John P. Amato
Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022

 _____/s/_____
GREGG A. CERVI