**EXHIBIT A**

**SETTLEMENT AGREEMENT**
Dated: November 21, 2004

This is an agreement (the "Settlement Agreement") between International Marine and Industrial Applicators, Inc. ("IMIA"), Alan M. Grochal, as Liquidating Agent ("the Liquidating Agent") for Baltimore Marine Industries, Inc. ("BMI"), and Heller Financial, Inc. ("Heller").

**RECITALS**

**WHEREAS**, IMIA, on the one hand, and the Liquidating Agent (as successor in interest to BMI) and Heller, on the other (IMIA, the Liquidating Agent, and Heller, each, a "Party"; collectively, the "Parties") are adverse parties in Case # MJG-02CV-3542 (the "Lawsuit"), now pending before the United States District Court for the District of Maryland;

**WHEREAS**, IMIA, on the one hand, and the Liquidating Agent, as successor in interest to BMI, on the other, are among the adverse parties in an adversary proceeding pending before the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Bankruptcy Case No. 03-80215 (the "BMI Bankruptcy Case"), Adversary Proceeding No. 03-08154 (the "Baugh Interpleader"), in which IMIA and the Liquidating Agent, among others, assert conflicting interests to certain interpleaded funds; and

**WHEREAS**, IMIA, on the one hand, and the Liquidating Agent, as successor in interest to BMI, on the other, are among the adverse parties in an adversary proceeding pending before the Bankruptcy Court in the BMI Bankruptcy Case, Adversary Proceeding No. 04-01871 (the "Zeus Interpleader"), in which IMIA and the Liquidating Agent, among others, assert conflicting interests to certain interpleaded funds;

#446853v.1

**WHEREAS**, in the BMI Bankruptcy Case, IMIA has asserted a claim in the amount of $2,596,697.20 against BMI by filing a Proof of Claim, identified as Claim Number 387 in the Claims Register ("Claim No. 387");

**WHEREAS**, Heller, on the one hand, and the Liquidating Agent, as successor in interest to BMI, on the other, also have asserted claims to certain funds that are held in an escrow account maintained by Commonwealth Land Title Insurance Company ("Commonwealth") that was created to secure those claims against Heller asserted by IMIA in the Lawsuit (such funds, the "Escrow Funds");

**WHEREAS,** resolution of the Lawsuit will also resolve the claims of Heller and the Liquidating Agent to the Escrow Funds;

**WHEREAS**, the Parties have been ordered to mediate the Lawsuit and have reached a settlement encompassing the claims asserted in the Lawsuit as well as in the Baugh Interpleader, the Zeus Interpleader, and Claim No. 387; and

**WHEREAS**, by this Settlement Agreement, the Parties intend to memorialize the terms and conditions for settlement of these disputes.

**NOW, THEREFORE,** the Parties agree to the terms and conditions set forth below:

## TERMS AND CONDITIONS

1.  This Settlement Agreement constitutes the legal, valid, and binding obligation of each of the Parties, enforceable against them in accordance with its terms, subject only to the entry of a final non-appealable order of the Bankruptcy Court approving, without material modification, the Settlement Agreement (the "Approval Order"). If the Liquidating Agent does not obtain such an Approval Order, this Settlement Agreement will be of no effect and the Parties will not be bound hereby.

2.     The Liquidating Agent agrees that within ten (10) calendar days of receiving this Settlement Agreement fully executed, he will cause to be filed in the BMI Bankruptcy Case a motion (the "Approval Motion") seeking entry of the Approval Order.  The Liquidating Agent agrees to promptly serve and expeditiously prosecute the Approval Motion.

3.     Within fifteen (15) calendar days after the Approval Order is final and non-appealable, the Liquidating Agent agrees to direct Commonwealth to disburse the Escrow Funds as follows:  first, to IMIA, $1,000,000 (the "Escrow Payment"); then, to Heller, sums sufficient to reimburse Heller for its accrued attorneys' fees and expenses to the extent not previously paid; finally, the balance, including all accrued interest, to the Liquidating Agent for disbursement to creditors pursuant to the confirmed Joint Plan of Liquidation.   Heller consents to such disbursements.

4.     Effective upon IMIA's receipt of the Escrow Payment, IMIA acquits, discharges, and releases Heller and its past and present affiliates, agents, assigns, attorneys, officers, directors, employees, insurers, shareholders, and successors of and from any actual or potential liability, demand, cause of action, cost, expense, attorneys' fees, damages, indemnity, and obligation of every kind and nature, at law, in equity or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, whether or not raised in the Lawsuit, that may have arisen or occurred or be related to any action or inaction of BMI, the Liquidating Agent, or Heller that occurred on or before the date of this Settlement Agreement and that arises out of or in any way relates to the disputes in the Lawsuit.  Nothing in this paragraph waives, or is intended to waive, any right of any of the Parties to enforce this Settlement Agreement.

5.      Within two (2) business days of its receipt of the Escrow Payment, IMIA agrees to dismiss with prejudice its claims and counterclaims filed in the Baugh Interpleader and the Zeus Interpleader.

6.      Effective upon IMIA's dismissal with prejudice of its claims and counterclaims in the Baugh Interpleader and the Zeus Interpleader, Claim No. 387 is deemed an amended and allowed general unsecured claim in the BMI Bankruptcy Case in the amount of $1,600,000.

7.       Notwithstanding the allowance of Claim No. 387 as a general unsecured claim in the amount of $1,600,000, IMIA will be entitled to receive a minimum 25% distribution on account of Claim No. 387 (i.e., $400,000) and a maximum distribution of 31.25% (i.e., $500,000), regardless of the actual distribution to general unsecured creditors.  In the event the distribution in the BMI Bankruptcy Case to general unsecured creditors is more than 25% but less than 31.25%, IMIA will receive the same distribution as other general unsecured creditors.

8.      Effective upon IMIA's dismissal with prejudice of its claims and counterclaims in the Lawsuit, Baugh Interpleader and the Zeus Interpleader, the Liquidating Agent, as successor in interest to BMI, acquits, discharges, and releases IMIA of and from any actual or potential liability, demand, claim, cause of action, cost, expense, attorneys' fees, damages, indemnity, and obligation of every kind and nature, at law, in equity or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, whether or not raised in the Lawsuit, the Baugh Interpleader or the Zeus Interpleader, that may have arisen or occurred or be related to any action of inaction of IMIA that occurred on or before the date of this Settlement Agreement and that arises out of or in any relates to the disputes in the Lawsuit, the Baugh Interpleader or the Zeus Interpleader; excluding, however, any claims that the Liquidating Agent, as successor in

#446853v.1

4

interest to BMI, ever had, now has or may have for recovery, avoidance or turnover arising under or pursuant to 11 U.S.C. §§ 542-545, 547, and 548-550.

9. Subject to and excluding the allowance of Claim No. 386 as a general unsecured claim in the amount of $1,600,000, and the distribution thereon, as provided in Paragraph 7 above and the disbursement of the Escrow Payment to IMIA as provided in Paragraph 3 above, IMIA acquits, discharges, and releases the acquits, discharges, and releases the bankruptcy estate of BMI and the Liquidating Agent, as successor in interest to BMI, of and from any actual or potential liability, demand, claim, cause of action, cost, expense, attorneys' fees, damages, indemnity, and obligation of every kind and nature, at law, in equity or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, from the beginning of the world to the date hereof, whether or not raised in, or arises out of or in any way relates to the disputes in, the Lawsuit, the Baugh Interpleader or the Zeus Interpleader.

10. Each of the Parties acknowledges that such Party has conducted sufficient deliberation and investigation, either personally or through other sources of the Party's own choosing, and has had the opportunity to obtain advice of counsel regarding the terms and conditions set forth herein, so that the Party may intelligently exercise the Party's own judgment in deciding whether or not to execute this Settlement Agreement.

11. This Settlement Agreement is intended to compromise and settle certain claims between the Parties. Nothing contained herein is intended to be, nor shall anything contained herein be deemed or construed to be, an admission by any Party as to any fact or legal principle relating to the Lawsuit, the Baugh Interpleader, the Zeus Interpleader, or Claim No. 387.

12. Subject to the requirement set forth in paragraph 3, that Heller be reimburse for its accrued fees and expenses, each of the Parties shall bear its own attorneys' fees and costs in the

Lawsuit, the Baugh Interpleader, the Zeus Interpleader, and in the negotiation and preparation of this Settlement Agreement.

13. Each of the Parties will cooperate in good faith with the others and will take all appropriate action and execute any documents of any kind that may be reasonably necessary or advisable to effectuate the provisions of this Settlement Agreement.

14. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be a duplicate original, but all of which, together, shall constitute one and the same instrument.

15. This Settlement Agreement shall not be construed against the Party preparing it, but shall be construed as if all of the Parties prepared this Settlement Agreement. Wherever used herein, the singular includes the plural, the plural includes the singular, and pronouns are to be read as masculine, feminine or neuter as the context requires. Maryland law, but not its conflicts of law rules, will govern the interpretation and construction of this Settlement Agreement. Each of the parties submits to the jurisdiction of the Bankruptcy Court for any action to enforce or interpret the Settlement Agreement.

16. Undersigned counsel represents and warrants his authority to execute this Settlement Agreement on behalf of the Party for whom or for which he signs.

17. This Settlement Agreement constitutes the entire agreement between the Parties pertaining to the Lawsuit, the Escrow Funds, the Baugh Interpleader, the Zeus Interpleader, and Claim No. 387, and it fully supersedes any and all prior understandings, representations, warranties and agreements between the Parties hereto pertaining thereto, and it may be modified only by a written agreement signed by all of the Parties.

18. This Settlement Agreement is binding upon and inures to the benefit of the Parties and their respective agents, executors, heirs, successors and assigns.

**INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, INC.,**

By: /s/ I. David Cherniak
    I. David Cherniak, Esquire
    Johnstone, Adams, Bailey, Gordon and Harris, LLC
    P.O. 1988
    Mobile, Alabama 36633

**LIQUIDATING AGENT FOR BALTIMORE MARINE INDUSTRIES, INC.**

By: /s/ Alan M. Grochal
    Alan M. Grochal, Esquire
    Tydings & Rosenberg LLP
    100 East Pratt Street, 25th Floor
    Baltimore, Maryland 21202

**HELLER FINANCIAL, INC.,**

By: /s/ Richard M. Kremen
    Richard M. Kremen, Esquire
    Piper Rudnick LLP
    6225 Smith Avenue
    Baltimore, Maryland 21209